PERE MARQUETTE RAILROAD CO. v. GRAHAM.

1. EJECTMENT—EVIDENCE—PLAT—ADMISSIBILITY.
   Where the deeds under which both parties to an action of ejectment claim title, as well as other deeds introduced in evidence, describe and convey the lots in dispute according to a certain plat, and it appears that lots in the city have been conveyed with reference to it, and the streets shown by it have been used as public highways for more than 20 years, the plat is admissible in evidence as an instrument referred to in the deeds, though it was so defectively executed as not to be entitled to record.

2. BOUNDARIES—SURVEYS — STARTING POINT — STREET CORNERS—DEFECTIVE PLAT.
   An iron pin, buried deep in the ground, that has been recognized for many years as marking the intersection of two streets, according to a plat in use as such for upwards of 60 years, is properly used as a starting point from which to locate the boundaries of the lots on the ground, though the plat itself contains no description of any starting point, and is so defectively executed as not to be entitled to record.

Error to Berrien; Coolidge, J. Submitted April 9, 1907. (Docket No. 40.) Decided December 10, 1907.

Ejectment by the Pere Marquette Railroad Company against Edmond A. Graham and others. There was judgment for plaintiff, and defendants bring error. Affirmed.

*Marshall L. Howell* and *Lawrence C. Fyfe*, for appellants.

*Stevens, McPherson & Bills* ( *Victor M. Gore*, of counsel ), for appellee.

GRANT, J. This is an action of ejectment for the south two-thirds of lot number 451 in the city of St. Joseph. On the first trial the court directed a verdict for the de-

fendants. That judgment was brought to this court and reversed. 136 Mich. 444.

Two questions were settled upon substantially the same record, which need not now be considered. It was there held that the foreclosure proceedings and the deed based thereon covered after-acquired property, including that in dispute. It was also held that there were two disputed questions of fact, namely: Was the land in dispute a part of the south two-thirds of lot 451? And had defendants acquired title by adverse possession? It only remains to be determined whether the court committed error during the progress of the trial in admitting or rejecting testimony, and in its instructions to the jury.

The evidence upon adverse possession was conflicting. The court gave to the jury 14 of the defendants' requests upon this point, which completely covered the law of adverse possession. These principles are familiar to the profession, and no further reference to the subject is required. One Brittain formerly owned the tract of land situated on the north side of St. Joseph river, extending to the lake. He made a plat of the land which now constitutes the city of St. Joseph. It was platted as the village of Newberryport and recorded in 1831. Between a steep bluff and the river was a strip of low land. Near the foot of the bluff was located a street called Water street. Between this street and the river bank were platted lots numbered from 433 to 466. This plat was recorded in the office of the register of deeds. There was a bend in the river along the front of a part of these lots, so that the river fronts and the street fronts of some of the lots were not the same. The plat contained no reference to monuments, and there is no evidence that the lots were originally staked out, or that any monuments were then placed from which the lots could be identified.

Objection was made to introducing in evidence a certified copy of the plat of the village of Newberryport because it (the plat) did not in all respects comply with the law under which it was executed, and was therefore not

entitled to record. Deeds under which both parties claim title, as well as deeds of other lots, introduced by defendants, described and conveyed the lots according to this plat. Lots in the city of St. Joseph had been conveyed with reference to it, and the streets shown by it had been used as public highways for more than 20 years. Although it was so defective as not to be entitled to record, still it was admissible in evidence as an instrument referred to in the deeds. *Johnstone* v. *Scott*, 11 Mich. 232; *Wiley* v. *Lovely*, 46 Mich. 83; *Quinnin* v. *Reimers*, 46 Mich. 605.

As to the original location of lot lines, the court stated to the jury the theory of each party. Upon this point the court instructed the jury in part as follows:

"Now, the real question in this case, so far as the title is concerned, is whether this Riverside House is on lot 451 according to that plat. Now, the contention of the plaintiff is that this Riverside House, which is now in possession of defendants, is on lot 451. The contention of the defendants is that the evidence don't show that this Riverside House is on lot 451. Now, the burden of proof devolves upon the plaintiff to show by a preponderance of evidence that this Riverside House is located on lot 451. Of course it is immaterial whether the defendants have any title to the premises or not, if the plaintiff has not established his title. The plaintiff must make out his title to this Riverside property or he fails in the action.

"Now, the plaintiff, in order to support his theory, has introduced the plat of the original village of St. Joseph or Newberryport, and the testimony of certain surveyors and engineers. The testimony of these surveyors and engineers is not conclusive, that is, you have a right to determine whether they have made a correct survey or not, whether they have got a correct starting point, whether they have used the proper methods or not. At the same time, gentlemen, it is your duty to pay due regard and respect to surveyors of ability and experience, unless you have some reason to question their integrity in the matter. I mean by that, where surveyors have been occupied in their business for a long time, and experienced surveyors, why of course their testimony is entitled to

weight, but of course it is not conclusive. You have a right to consider all the facts and circumstances in the case, and determine whether they have proceeded according to right methods, whether they have used the right starting point and whether their theory is correct or not.

" In this case the plaintiff's surveyors started out from an iron pin in Broad street at the intersection of Main and Broad. They assumed that that iron pin was in the center of Broad street, and from thence they started their survey, proceeding westward. They proceeded westward to Water street and found a number of iron pins, one at the corner of Front and Broad streets, one down on Water street; and from thence they proceeded—extended their line northward along Water street, finding other pins or what was assumed to be the intersections of streets.

"Now, this claim of the plaintiff is that, extending those lines from that iron pin at the intersection of Broad and Main streets, these iron pins which they found along their course were where they should have been; in other words, that they agreed with each other and that furnished evidence by which they conclude that the starting point was correct.    *    *    *

" If you find that the circumstances, the manner of the survey, the existing conditions all go to establish that survey to a reasonable certainty and leading to the conclusion that the Riverside House was on lot 451, then you will find that the original or record title of the Riverside House was on lot 451, and the plaintiff, so far as the original title is concerned, would be entitled to recover.

"Now, the contention of the defendants is, gentlemen, that no starting point has been established in this case. Of course no government monument is in evidence; it does not appear that the plaintiff's surveyor started from any monument erected by the government, and they say there is no reason why the surveyor should not have started from the north line instead of the south line, that is, from lot 440 up on State street.

"Now, it appears in this case from the testimony of the surveyors of the plaintiff that lots 440 down to 450 are less than 66 feet in width. Now, it is contended by the defendants that no reason is shown why those lots should be made less than 66 feet, or less in width than the lots south of 450. This is a mere matter of argument for you to consider in the case.

" It appears also in this case from the evidence pro-

duced by the defendant that Calvin Brittain, the original proprietor and platter of these lots, made deeds of these lots in 1832, the year after the plat was made, and by those deeds he described the width of the lots as 66 feet frontage on Water street.   Now, gentlemen, you have a right to take those deeds into consideration.    The defendant has argued and insisted that those deeds are conclusive.    I don't charge you that they are conclusive, but you have a right to take them into consideration for this purpose, as showing what the understanding of the original platter was as to the width of those lots.    It is an important factor in the case.    The deeds having been made at or near the time the plat was made, those deeds show what the understanding of Mr. Brittain, the original platter, was as to the width of those streets.    As I say, at the same time, I do not hold that they are conclusive. If they were I should have to direct a verdict for the defendant, but I hold those deeds merely constitute a fact in the case, and you have a right to take them into consideration.

"The defendants  also have introduced  a deed from Wallace to Joy, and their contention is that by that deed it appears Morrison and Joy thought the Riverside House was either on lot 449 or 450.   The theory of the defendant is that the house was on 450.   The contention of the plaintiff in regard to that deed is that none of the  parties knew where the Riverside House was located at all, and that the transactions in regard to the Midway and with regard to the driveway support the contention of the plaintiff rather than that of the defendant.   I leave those facts entirely for you, for your consideration, and do not comment or criticise them in any way."

The theory of the defendants is not that they have established title according to established monuments, but that the plaintiff has failed to establish title by any original monuments, or that the monuments they found and from which they made their measurements, were established monuments.   Their counsel assert:

"The plat contained no statement of any character indicating the scale upon which it was drawn, or the course of any lines or distance or dimensions; no section or other government lines appear upon it, and no monument or starting place of any character is designated; no descrip-

tion of the property platted or of the plat itself,—no words of dedication and no field notes are attached to it."

Yet the validity of the plat was recognized for more than 60 years, and deeds were made conveying land by reference to it. Iron pins were located at the intersection of streets, buried deep in the ground. When they were placed there the record does not disclose. It was also shown by the records of the common council that by an ordinance of the village the intersection of the center of Vine street with the south line of Ship street is shown by an iron pin. The surveyor found that pin. The record does not state when this action of the common council was taken. It is apparent that it was a long time ago. The date must have appeared from the record of the council. It was competent to use this as a starting point.

"Streets that have been opened in supposed conformity to a plat, and have been long acquiesced in, should be accepted as fixed monuments in locating lots or blocks contiguous thereto or fronting thereon." *Van Den Brooks* v. *Correon,* 48 Mich. 283.

See, also, *Twogood* v. *Hoyt,* 42 Mich. 612; *Hoffman* v. *City of Port Huron,* 102 Mich. 432.

This rule applies to landmarks or monuments which have long been recognized and established in supposed conformity to a recorded plat.

Under the theory of counsel for defendants, it would be impossible for any lot owner to establish his title in any other way than by adverse possession, and, as the court said to the jury, that was the principal claim of the defendants. The defendants' surveyors ignored the pins and other monuments, and, as one of them said, "failing to find pins in many intersections and finding other pins that misled me in my surveys, I adopted the sidewalks as established and went by them," though he admitted that he would not deem sidewalks, laid without a survey, to be a safe and proper guide in determining street lines.

The plaintiff employed educated and experienced engineers. They examined all the records and obtained all the information possible. Acting upon the information thus obtained, they located the monuments above described and found them to correspond with the plat. The evidence was competent. It would not be profitable to set forth in detail the testimony of the surveyors for the respective parties. It would unnecessarily lengthen this opinion. It was conflicting, and the issues were properly submitted to the jury. We find no error in the rulings of the court during the trial, or in his instructions.

The judgment is affirmed.

MCALVAY, C. J., CARPENTER, BLAIR, and OSTRANDER, JJ., concurred.