## CHARLESTON.

WISEMAN v. CRISLIP *et als.*

Submitted February 27, 1912.   Decided April 22, 1913.

1.  DEEDS—*Construction—Description.*

    Of two descriptions of land in a deed, one of which is capable of complete and exact application to a subject matter and the other not, the former is accepted as correct and the latter rejected as erroneous, unless something in the deed, read in the light of the situation and circumstances of the parties, discloses intent inconsistent with such construction.   (p. 344).

2.  REFORMATION OF INSTRUMENTS—*Deeds of Married Women.*

    In the absence of statutory enlargement of the common law powers of married women, respecting dispositions of their real estate, equity will not reform the deed of a married woman so as to make it include land it should have embraced, but, by reason of mistake, did not.   (p. 346).

3.  HUSBAND AND WIFE—*Reformation of Instruments—Deeds by Married Women—Validity.*

    Notwithstanding the married women statutes of this state, the contractual powers of married women respecting conveyance of their real estate are limited in the exercise thereof to a particular and exclusive mode and *quoad* such estate they have not the contractual powers of *femes* sole, wherefore equity will not correct a mistake in the deed of a husband and wife, conveying only land of the former, so as to make it include lands of the latter, in the absence of a written contract for the sale of her land, executed in the manner prescribed by the statute.   (p. 346).

Appeal from Circuit Court, Roane County.

Bill by Henry A. Wiseman against Cyrus A. Crislip and others. From a decree for plaintiff, defendants appeal.

*Reversed.   Bill Dismissed.*

*Walter Pendleton,* and *Thos. P. Ryan,* for appellants.

*J. M. Harper* and *Geo. F. Cunningham,* for appellee.

POFFENBARGER, PRESIDENT:

The bill filed in this cause, for reformation of a deed, so as to make it include 50 acres of land, alleged to have been included in the contract of sale, but admittedly not included in the deed, proceeds upon two alternative theories: Equitable title in the male defendant, by reason of his alleged purchase of the additional land claimed, or title in the female defendant, a married woman and a contract of sale thereof on her part, with intent to include it in the deed and a right of reformation against her so as to obtain the benefit of the alleged contract.

The former theory rests upon the contention that the judicial sale at which C. A. Crislip became a purchaser included two tracts of land, one of 200 acres and another of 50 acres, under a designation of one tract of 200 acres, there having been a previous sale of 16 acres out of the 200 acres, and one of 35 acres, not shown to have come out of the 200 acre tract or the 50 acre tract, but supposed to have been taken out of one or the other of them. The question thus presented is the construction of the decree of sale under which C. A. Crislip purchased, viewed in the light of the decree confirming it and such other portions of the record of the suit as are available, practically all of the papers having been lost or destroyed, possibly destroyed by fire. The 50 acre tract and the 200 acre tract were conveyed to Lemuel Crislip on Dec. 2, 1865, the former by Abner Suttle and wife and the latter by Eli Perkins and wife. They were adjoining tracts and seem to have been parts of a larger tract of 400 acres. They are known, respectively, as the Suttle tract and the Perkins tract. On April 13, 1880, Lemuel Crislip conveyed to his son, John L. Crislip, two tracts of land, containing, respectively, 16 acres and 35 acres. Admittedly the 16 acre parcel was a portion of the 200 acre Perkins tract, but it does not appear from what land the 35 acres was taken. On the 22nd day of October, 1880, Lemuel Crislip executed to B. F. Armstrong, trustee, a deed of trust, conveying to him by metes and bounds the Perkins tract of 200 acres, in trust to secure a debt to V. S. Armstrong and W. W. Riley, executors of the will of L. C. Stewart, deceased. This deed of

trust did not include the Suttle 50 acre tract. On the 10th day of October, 1883, Lemuel Crislip executed a deed by which he conveyed to his daughter, Margaret J. Crislip, certain lands, describing them as follows: "Being the same land conveyed by Eli Perkins & wife recorded in Book No. 2 page 540, and Abner Suttle and wife in Book No. 2 page 539 to said Lemuel Crislip party of the first part, except the land conveyed to John L. Crislip by the said party of the first part heretofore containing about 16 acres to the place of beginning." The original deed is not produced and it is said it cannot be found. The description is taken from an attested copy from the deed book in which it was recorded. As originally recorded, the deed, although professing to convey the two tracts of 200 acres and 50 acres, purported to convey only 200 acres, and by an erasure and alteration made in the deed book, it purports, as recorded now, to convey 250 acres. When, how and by whom this alteration was made is not shown. There is no proof of the allegation that it was done by C. A. Crislip, and he denies all knowledge of it. The alteration may be a mere correction of an error in recording the deed. However, the deed undoubtedly conveyed to Margaret J. Crislip the Perkins 200 acre tract and the Suttle 50 acre tract, whether they were described as containing in the aggregate 200 acres or 250 acres. In 1885, Reed and Peebles, judgment creditors of Lemuel Crislip, instituted a suit in equity against him, his co-debtor, J. B. Ward, and others, to subject the land of the said Crislip, including that conveyed to Margaret J. Crislip, to the payment of the judgment. The cause was referred to a commissioner who reported that the deed of trust held by Armstrong and Riley constituted "the first lien on the tract of 200 acres of land mentioned in the deed of Lemuel Crislip to B. F. Armstrong, trustee, bearing date the 22nd day of October, 1880," and which was "filed as Exhibit No. 5 in" the "cause and also being the tract of 200 acres of land mentioned in the deed of Lemuel Chislip to Margaret J. Crislip, bearing date on the 10th day of October, 1883, and being Exhibit No. 1 filed with the papers of "the cause"; that plaintiffs' judgment was the second lien in priority on the 200 acres of land and the first lien on a tract of 20 acres mentioned in the deed from Lemuel Crislip to M. J. Crislip, bearing date Jan. 1, 1885. He further reported a debt due to J. A. A. Vandale, secured by a deed of trust, as constituting a first lien on a

tract of 118 acres of land and a debt due to A. L. Vandale, secured by a deed of trust, as a second lien on said 118 acres and the plaintiff's judgment as the third lien on that tract. He further found and reported that the consideration of the conveyance to Margaret J. Crislip of October 10, 1883, was her assumption of the debts and liabilities of the firm of Crislip and Vandale, and all debts and mortgages and liabilities of the said Lemuel Crislip. This report was confirmed and a decree of sale, conditioned on non-payment of the debts by Lemuel Crislip or some one for him, was entered in the following terms: "That J. G. Schilling and Geo. F. Cunningham, who are hereby appointed Special Commissioners for that purpose, either of whom may act, shall sell the tract of about 20 acres of land mentioned in Exhibit No. 2, of the papers of this cause and the tract of 200 acres of land mentioned in Exhibit No. 1, of the papers of this cause, and the tract of 118 acres mentioned in Exhibits No. 6 and 7 of the papers in this cause, * *  * * Such sale to be made in the following order:—The tract of about 20 acres of land to be first offered and sold, and if that does not bring enough to pay off and discharge amounts decreed the plaintiff, principle, interest and costs, then the tract of 200 acres of land shall be next offered for sale and sold, and if said tract of land shall not bring enough to pay off and discharge and satisfy the amount decreed to B. S. Armstrong and W. W. Riley, executors, &c., and also, together with the proceeds of sale of the 20 acre tract, pay off and discharge the amount decreed to the plaintiffs, then the tract of 118 acres shall be next offered and sold." At the sale under this decree C. A. Crislip became the purchaser of the 200 acre tract of land at the price of $1,700.00 and the 20 acre tract at the price of $21.00. For some reason the 118 acre tract seems not to have been sold and there is no reference in any of the decrees to the 50 acre tract *eo nomine*.

Crislip, the purchaser of the 200 acre tract, took no deed for it. He subsequently sold and conveyed to Wiseman, and Geo. F. Cunningham, one of the commissioners who made the sale, joined in the deed to Wiseman, though J. G. Schilling alone had been directed to execute the deed on payment of the purchase money. The deed conveys only the Perkins tract. Wiseman claims Crislip sold him both as containing about 200 acres, and has sued for reformation of the deed. The court below, granting the

prayer of his bill, reformed the deed so as to make it include the Suttle tract.

Assuming the deed from Lemuel Crislip to Margaret J. Crislip, dated October 10, 1883, to have been at first correctly recorded and to have described the land thereby conveyed as containing 200 acres, as and for the aggregate residue of the Perkins 200 acre tract and the Suttle 50 acre tract, as contended by counsel for the appellee, we have thus far some foundation in the record for the view that the circuit court may have intended by its decree a sale of such residue of such 200 acres, or, to be more accurate, we have some evidence of intent to decree such a sale. The deed from Lemuel Crislip to Margaret J. Crislip is not, however, the instrument by which title was passed to Cyrus A. Chislip. The muniments of title immediately involved are the decree under which he purchased and the confirmed sale thereunder. The decree describes the tract of land ordered to be sold as the tract on which Armstrong and Riley, executors, had their deed of trust, and that was incontrovertibly the Perkins 200 acre tract only. The land ordered to be sold is further described as being the 200 acres of land mentioned in the deed from Lemuel Crislip to Margaret J. Crislip, filed in the papers in the cause as Exhibit No. 1. That deed may be read as having described two 200 acre tracts, the Perkins tract conveyed to Lemuel Crislip and by him subsequently conveyed to Margaret J. Crislip, being one, and the aggregate residue of the two tracts conveyed by Lemuel Crislip to Margaret J. Crislip described in that deed, as containing 200 acres. If the land decreed to be sold was the 200 acres described in the deed from Lemuel Crislip to Margaret J. Crislip by reference to the deed to Lemuel Crislip for the Perkins tract, then the decree correctly recited, found and adjudicated that the Armstrong and Riley deed of trust was a lien thereon, but, if the 200 acres referred to in the decree, was 200 acres composed of the residues of the Perkins tract and the Suttle tract, defined as one, the Armstrong and Riley deed of trust was not a lien on the whole thereof, and the recitals of the decree, its findings and adjudication, were wrong. Moreover, the Reed and Peebles judgment would have been the first lien on the Suttle tract instead of the second. If, on the other hand, the 200 acre tract mentioned in the decree and ordered to be sold is regarded as the Perkins tract only, the decree is consistent in all respects, for the Arm-

strong and Riley deed of trust was the first lien on that tract, the Reed and Peebles judgment was the second lien thereon, and it had been conveyed to Margaret J. Crislip by Lemuel Crislip by the deed of Oct. 10, 1883. Thus we have two descriptions, one of which corresponds exactly with a subject matter and the other of which does not. In such cases the rule of law is plain. The description answering or capable of full and complete application to the subject matter and therefore apparently correct must be accepted and the erroneous one rejected. "If there is any land wherein some of the demonstrations are true and some false, only those lands shall pass wherein the demonstrations are true; or, in other words, where the grantor in a deed owns lands which comply with all the particulars of the description, the deed passes title to those lands only, although it may appear that the grantor intended other premises to pass also, which were included within only a part of the description." 4 A. & E. Enc. L. 799. *Barbour et als.* v. *Tompkins,* 58 W. Va. 588. "The description the most certain is to be adopted where two descriptions in a deed do not agree." Devlin on Deeds sec. 1013d. To the same effect see 13 Cyc. 630.

That in the conveyance by Lemuel Crislip to Margaret J. Crislip, the latter assumed the payment of the indebtedness of the former and the firm of which he was a member, as consideration, is a circumstance relied upon as conflicting with the conclusion here announced. It is, however, somewhat remote and clearly inconclusive. The decree deals with one 200 acre tract of land, treating it as the tract mentioned in the deed from Lemuel Crislip to B. F. Armstrong, trustee, and also as the tract of 200 acres in the deed from Lemuel Crislip to Margaret J. Crislip. There is but one 200 acre tract of land which answers the description and that is the Perkins tract. It is also the only tract which corresponds with other recitals and adjudications found in the decree. There is no description by metes and bounds nor otherwise than by reference to documents and this description so clearly defines the land sold as the Perkins 200 acre tract that mere extraneous evidence and circumstances cannot be permitted to overthrow it. The decree had not enforcement of payment of the consideration for its primary object. The purpose of the suit was the enforcement of liens independent of the agreement

to pay debts, and that agreement did not in any way affect the validity or relation of the liens.

The title to the 50 acre tract of land being thus found to be in Margaret J. Crislip, a married woman, the remaining inquiry is whether or not reformation of the deed can be had as to her. She joined her husband, C. A. Crislip, in the deed to Wiseman conveying the Perkins tract. That deed conveyed none of her land. It conveyed only a tract of land, the equitable title to which was in her husband, C. A. Crislip. She entered into no written contract of any kind or character for the conveyance of any of her land, unless the deed of the husband in which she joined can be considered as such contract. All that is relied upon in this connection is an alleged verbal contract of sale. A married woman cannot bind herself to convey her land in that way. *Simpson* v. *Belcher,* 61 W. Va. 157; *Amick* v. *Ellis,* 53 W. Va. 421; *Rosenour* v. *Rosenour,* 47 W. Va. 554; *Moore* v. *Ligon,* 30 W. Va. 146. Nor, if it is deemed to have been intended to convey her land, but not to have done so because of a mistake, can reformation thereof be had against her, unless the recent Married Woman's statute has altered her status in this respect. "Although the courts have entertained different views as to whether or not a suit to reform will lie as against a married woman, it is now pretty well settled that, in the absence of power conferred by statute putting a married woman on an equal with *feme soles* as respects property or capacity to contract, a mistake in a written instrument will not be reformed as against them." 34 Cyc. 959. This text is sustained by *Martin* v. *Gargandine,* 46 Ill. 322; *Hutchings* v. *Huggins,* 59 Ill. 29; *Building Ass'n* v. *Scanlan,* 144 Ind. 11; *Shroyer* v. *Nickell,* 55 Mo. 264; *Bank* v. *Schmidt,* 6 Mont. 609; *Carr* v. *Williams,* 10 Ohio 305; *Purcell* v. *Goshorn,* 17 Ohio 105; *Pelesch* v. *Hambach,* 48 Wis. 443; *Conrad* v. *Schwamb,* 53 Wis. 372; *O'Malley* v. *Ruddy,* 79 Wis. 147. See 42 Cent. Dig., sec. 114. The Married Woman's statute in this state has not changed a married woman's status in respect to capacity to convey her real estate. Some of the decisions already cited were rendered after the passage of that act. She cannot convey except in the manner prescribed by statute nor can she bind herself to convey except by a contract executed and acknowledged in the statutory form prescribed for her acknowledgment of deeds. By an express provision of section 3 of chapter 66 of the Code, as amended

by chapter 109 of the Acts of 1891 and chapter 3 of the Acts of 1893, her power of disposal over her real estate is thus limited. Nothing in said chapter as amended by the recent acts, here referred to, manifests any intent to enlarge her powers respecting her real estate. She may make contracts, binding her estate, but the provision relating to her power of disposal of her separate real estate is the same as it was in the act of 1866. The present statute makes a judgment at law against her a lien on her land, and thus varies and extends remedies against her, but this does not put her on an equal footing with *femes sole* as to her lands. Formerly it was necessary to proceed in equity to charge her separate estate with her debt, but she could contract debts for which her separate estate was liable to be so charged. *Radford* v. *Carwile*, 13 W. Va. 572. Such variation and extension of the remedy do not enlarge her contractual powers. This section of the statute must be read in connection with the provision of section 3 to which reference has been made and in subordination thereto. This conclusion harmonizes with views expressed and principles stated in *James* v. *Kellar*, 63 W. Va. 139, 142, a case involving the construction in general of the Married Women's Statute.

In that case we said: "The liberal rule of construction only requires that a statute be so enforced as to carry into effect the will of the legislature as expressed in the terms thereof, and give, not stintedly or niggardly, but freely and generously, all the statute purports to give. This stops far short of carrying the statute to purposes and objects entirely beyond those mentioned in it. One object of these statutes is to enable a married woman to have the absolute, free and unrestrained control of her property and power to make contracts respecting it and to vindicate her property and contract rights by action in the courts of the state as if she were a *feme sole*. For the accomplishment of these purposes, the statute should be liberally construed. She is subjected, by this same law, to the reciprocal right extended to others to sue her in the courts as if she were a *feme sole,* and, for the effectuation of this purpose, the statutes should be liberally construed. So, in respect to all the other rights and liabilities expressly given and imposed by this law. The evils intended to be suppressed and the purposes and objects to be promoted are all mentioned in the statutes and the rule of liberal construction requires no more than that they shall be so interpreted and applied

as to suppress the named evils and effectuate the specified purposes and objects. It does not authorize the court to add other supposed evils, purposes and objects."

As the title to the land in controversy is held by Mrs. Crislip, a married woman, living with her husband, against whom reformation of the deed so as to include it cannot be decreed, the decree complained of must be reversed and the bill dismissed with costs.

*Reversed.    Bill Dismissed.*

WILLIAMS, JUDGE, *(concurring)*:

I concur in the decision for the reason that the description of the land in the deed embraces no part of the wife's land. There having been no previous written contract of sale by the wife, there is no evidence that it was her intention to convey any part of her land. An oral contract by a married woman for the sale of her land is void.

But I do not agree to the limited purpose and effect which the opinion seems to give to sec. 3, ch. 66, Code 1906. That statute empowers a married woman to contract respecting her land, and to convey the same, but prescribes the manner of her doing so. The limitation is upon the form, or manner only, of executing the contract, not upon its effect and the rights of the contracting parties, when properly executed. It must be in writing and be signed by the husband, unless she is living separate and apart from him. But if it is executed in the manner prescribed, it is as binding upon the contracting parties, and is subject to the same remedies for reformation and specific performance, at the suit of either contracting party, as if it had been made by a man, or a *feme sole*. Because the statute says she may contract; that is, she may make an executory, or an executed, contract, "in the manner, and with the like effect as if she were unmarried." Her contract, executed in the *manner* prescribed, confers the same rights and is susceptible to the same remedies as like contracts executed by unmarried women; else it would not have "like effect." Of course, if the requirement of the statute, respecting formality of execution, has not been complied with, the courts would have no power to supply such omission, because, to do so, would be to *make* a contract. But if a married woman, her hus-

band joining, has executed a contract for the sale of her land, and she thereafter follows it up by executing a deed in which her husband joins, and the deed happens not to conform to the contract; or, if she has executed such a contract, and thereafter refuses to comply with it by executing a proper deed, there is certainly no reason, satisfactory to my mind, why equity should not correct the deed in the one instance, and compel its execution, in the other, just as in other cases. Any other view of the statute would encourage the commission of wrongs, by shielding the fraudulent and erroneous deeds of married women, and by converting their contracts into options. The Legislature certainly had no intention that the statute should have such an effect.

The great weight of authorities from other states, construing similar statute, the terms of some of which are less comprehensive than ours respecting the contractual rights of married women concerning their separate estates in lands, supports this view. See the following: *Lewis* v. *Ferris,* (N. J. Ch.) 50 Atl. 630; *Stevens* v. *Holman,* 112 Cal. 345, 53 Am. St. Rep. 216; *Herring* v. *Fitts,* 43 Fla. 54, 30 Sou. 804; *Hamar* v. *Mesker,* 60 Ind. 413; *Snell* v. *Snell,* 123 Ill. 403, 5 Am. St. Rep. 526, (but the Illinois statute is broader than ours) ; *Gardner* v. *Moore,* 75 Ala. 394, 51 Am. Rep. 454; 26 A. & E. E. L. 99; 34 Cyc. 959.