BRUCE YOKUM *et al., Exec., Etc.* v. HATTIE M. YOKUM *et al.*

(No. 6820)

Submitted February 24, 1931. Decided March 3, 1931.
(Rehearing denied April 3, 1931).

222

*McWhorter, White & Browning, F. E. Tallman, Koontz, Hurlbutt & Revercomb,* and *Harry B. Lambert,* for appellants.

*Talbott & Hoover, John F. Brown* and *D. H. Hillhold,* for appellees.

HATCHER, JUDGE:

This is a suit, brought in January, 1929, by the personal representatives of Humbolt Yokum, deceased, to settle his estate. The appeal involves the priority of the claim of Greenbrier Joint Stock Land Bank (hereinafter called the bank).

Mr. Yokum died in 1920, testate, leaving a widow, Hattie M. Yokum, and several children, some of whom were infants. He was indebted to the amount of $63,218.84. His estate was appraised at $94,715.66, of which $42,560.66 was personal property. His real property consisted of town lots, several farms and numerous undivided interests in tracts of land. For purposes of "due administration, use, preservation, management or sale" of the real property he conferred all of his real estate on his executors except a tract of 7-3/10 acres "at" the town of Beverly and a lot in the city of Elkins which were given to his widow. He then directed that his representatives continue his business "by the purchase, grazing and raising of live stock, by general farming and like operations, reducing my indebtedness from time to time as necessary and feasible out of the proceeds of sales to be made by them of personal property and out of such business operations." He further directed his executors to pay out of the income to be derived from their use and management of his property $200.00 a month to his widow, for the support of herself and children; and that his executors expend reasonable sums for the education of his children (including professional education if any child desired it) out of said income, and if that were not sufficient then out of the

property itself. There being no objections from any of the creditors or beneficiaries, the representatives pursued the plan of the testator. In 1925, the executors submitted to the Bank a written application for a loan of $25,000.00, which stated that they were then carrying notes in the bank owned by H. Yokum at his death, which amounted to $21,-000.00, that this amount was the total liability of the estate, and that they proposed to use the loan to pay off the indebtedness and to purchase live stock. The Bank loaned them $15,000.00 (on September 1, 1925) and as security for the loan they executed a deed of trust on a tract of 266 acres belonging to the estate. The Bank relied on the following provision of the will: ''I also hereby authorize and empower my said executors and trustees if in their opinion it is promotive of the best interests of the beneficiaries * * * and advantageous in and for the proper conduct of the business to be conducted by said executors and trustees, to borrow money by temporary loans from time to time, for such amounts as may be reasonably proper and useful, and to pledge personal property, embraced by this Item V of my will, for payment of such loans, and to make, execute and deliver deeds of trust upon any or all of my real estate, embraced by this Item V of my will, as security for such loans.'' The $15,000.00 was to be repaid in sixty semi-annual installments of $542.10 each. After five years the entire principal could be paid. $5,065.40 of this loan was used to satisfy debts of the testator. The evidence is not specific as to the expenditure of the balance. Part was used to ''buy some stock'' (presumably *live stock*), part to pay interest, and part to pay the expenses of administration. The continuation of the testator's business by the representatives did not prove a financial success, and the estate had become insolvent when this suit was brought. Only six of the semi-annual installments were paid the Bank, and the balance due it on September 1, 1929, was $14,404.37. The circuit court disregarded the trust deed and treated the Bank as a common creditor of the estate. The Bank appealed.

A temporary loan is generally understood to be one which is made for a year or less, depending upon the circumstances

of the case. See Words & Phrases, Judicially Defined, Vol. 8, pp. 6901-2. A loan for five years (the minimum time for repayment of the Bank's loan) could not be considered a temporary one. It was not so regarded by the executors. "No, it wasn't for temporary purposes," said H. Baker Yokum, the executor who was actively in charge of the estate. Consequently the loan and the deed of trust to secure it were not authorized by the will, but must be treated as a loan to the executors.

As two of the executors are also devisees under the will, the Bank contends that the loan and trust deed are valid as to the interests of the two devisees in the 266 acres. The record does not disclose that any of the devisees are denying the validity of the transaction with the bank. It is true that Hattie M. Yokum excepted to the commissioner's report, but the exception was only as to the priority of her personal demands. A further discussion of this contention, however, would be academic as the devisees, as such, will derive nothing from the 266 acres.

The bank also claims a valid title against the unpaid creditors of the testator by reason of Code 1923, chapter 86, section 5, which protects one who purchases from an heir, under certain conditions. The Bank had actual notice before making the loan that debts of the testator amounting to $21,000.00 were still unpaid. Therefore, the Bank was not such *bona fide purchaser* as the statute was designed to protect. These creditors received small payments of interest out of the loan, for which reason the Bank further contends that such creditors are estopped to deny the validity of the trust deed. It is not shown, however, that they had actual knowledge of the transaction with the Bank. Estoppel cannot be predicated on mere constructive notice. Counsel also contend that the creditors are estopped because of their tacit consent to the continuation of the business by the executors. Code 1923, chapter 86, section 3, gave to the creditors liens (severally) on the decedent's real estate at the date of his death. Merely resting upon that security would not raise estoppel, unless the Bank was misled thereby. The officers of the Bank make no claim that they were so misled.

Finally, the Bank seeks subrogation. Counsel for appellees cite cases decided many years ago, giving a narrow scope to the doctrine of subrogation. The doctrine has been greatly extended since those cases. In 1899 the Supreme Court of Nebraska said: "The doctrine or rule of subrogation is not a fixed and inflexible rule of law or equity." *Bank* v. *Paulson,* 57 Neb. 717, 78 N. W. 303. Modern courts have generally concurred in that statement and have refused to be limited by the restricted generalizations pronounced in the early textbooks and decisions. "The doctrine of subrogation is steadily expanding in its practical administration, so as to embrace all cases where complete justice cannot be done without it." *Walker* v. *Walker,* (1917) 138 Tenn. 679. See the authorities cited in *Huggins* v. *Fitzpatrick,* 102 W. Va. 224, on page 228; 37 Cyc., p. 373, sec. B. The loan made by the Bank was not *voluntary* or *offiicious,* but upon the solicitation of the executors. The loan was used by the executors to reduce the indebtedness of the estate and pay the costs of administration. It has been the settled rule for many years that the right of subrogation would be extended to executors who, having exhausted the personal estate in payment of debts, then paid out of their personal funds other debts of the testator or of the estate. *Gaw* v. *Huffman,* (1885) 12 Gratt. 628, (binding on us); *Earle* v. *Coberly,* 65 W. Va. 163, 166; Woerner on Administration (3rd Ed.), sec. 469, p. 1629; 11 R. C. L., p. 221. It may also be taken as generally established that when money is loaned to an executor to be applied on the debts of the decedent or on the expenses of administration, and the loan is in fact so expended, the lender will be subrogated to the rights of the executor. *De Concillio* v. *Brownrigg,* 51 N. J. Eq. 532, 535; 24 C. J., p. 71, sec. 491; 25 R. C. L., p. 1342; Annotation 35 A. L. R., p. 50, from which we quote: "The general rule seems to be that a person who has loaned money to an executor or administrator, which is used for the benefit of the estate, while having no legal claim except against the representative personally, is, on equitable principles, entitled to be subrogated to the right of the representative to reimburse from the estate for his expenditure for its benefit." Conse-

quently, we. hold that the Bank is clearly entitled to subrogation. $5,065.40 of this loan having been paid to three creditors of the testator, the Bank is subrogated to their liens (one a judgment lien; the other two, statutory liens). The Bank is also subrogated to the liens of the testator's other creditors for whatever amount of interest they received from the loan. The balance was used to pay the costs of administration. There is no lien favoring such costs, and the Bank must take the position of a common creditor as to the balance.

The circuit court found that the indebtedness of the testator remaining unpaid in 1930 was $30,405.52. This is, of course, secured. It appears now that in 1925, at the time of the application to the Bank for the loan, the testator's indebtedness amounted to at least $28,000.00 instead of $21,000.00, as represented. The estate was also indebted at that time for costs of administration, though the amount of such indebtedness is undetermined. Whatever the amount, it was not mentioned in the application to the Bank. As the executors proposed in their application to use only $4,000.00 for the purchase of live stock, and to use the balance in paying off debts of the testator, the Bank had the right to assume that of the $15,000.00 loaned, $11,000.00 would be applied to the payment of such debts. Instead the executors applied only $5,065.40 to that purpose. Some of the loan was appropriated directly by Hattie M. and H. Baker Yokum personally, and some was used indirectly for their individual benefit. Among the secured claims making up the $30,405.52 are two in favor of Hattie M. Yokum; one being for $5,551.44 and one for $7,308.33. (The latter claim is subjected by the decree to the unpaid balance on a certain note executed by Mrs. Yokum.) Among the unsecured claims are four aggregating $10,444.22 also in her favor. H. Baker Yokum was allowed an unsecured claim of $2,571.03. Hattie M. and H. Baker Yokum are both executors and both signed the request to the Bank misrepresenting the liabilities of the estate. Both participated in and profited (to some extent) by the misapplication of part of the loan. We are aware that such high authority as Corpus Juris states: ''It is a rule of general application that an act done in a representative capacity will not estop one in his individual capacity.'' 21

C. J., p. 1184, sec. 187. The cases cited in support of the text do not contain the element of misrepresentation or of misconduct, and do not make or warrant so broad a statement. This text is not consistent with that on pp. 1181-2, *supra*, that "Estoppels *in pais* are available * * * against any person responsible for a statement or representation." Neither is it consistent with the admitted weight of authority that a deed made with general covenants by a representative estops him individually. p. 1104, *supra*. Had the executors applied the loan as they proposed to the Bank they would do, the Bank would now be subrogated to secured claims amounting to $11,000.00 as of September, 1925. It is not equitable under the circumstances that Hattie M. and H. Baker Yokum should prosper as individuals, while the Bank should lose through their executorial misdeeds. We therefore hold that they be estopped to receive anything on their claims either for themselves or for their personal and unsubrogated creditors until the Bank is paid all of its unsecured balance as of September, 1925, except the $4,000.00 which was proposed to be expended on live stock, (there being no misrepresentation as to the $4,000.00).

The decree of the circuit court is reversed as to the priority accorded the claim of the Bank, and the cause is remanded to be further dealt with not only as to the Bank but as to all other creditors, in accordance with the principles announced in this opinion.

*Reversed in part; remanded.*