ROANE COUNTY BANK *v.* PHIL D. PHILLIPS, *Sheriff, etc., Admr., et al.*

(No. 9104)

Submitted September 8, 1942.   Decided October 6, 1942.

*Grover F. Hedges* and *William Beasley,* for appellant.
*S. P. Bell,* for appellee.

ROSE, JUDGE:

The Federal Land Bank of Baltimore was awarded this appeal from a final order of the Circuit Court of Roane County in a suit instituted by the Roane County Bank against the personal representative of Florence Evilsizer and her heirs and creditors, praying for a settlement of the accounts of the personal representative and the subjection of her real estate to the payment of her debts not liquidated by her personalty.

The criticism of the decree, summarized, is (1) that the court did not hold that the land bank's mortgage covered a certain tract of land containing 92 square rods not specifically described therein; (2) that reformation of the land bank's mortgage so as definitely to include said tract of land was refused; and (3) that the land bank's mortgage debt was not allowed also as a common claim against the unmortgaged assets of the intestate's estate.

The record shows that Florence Evilsizer, a resident of Roane County, died December 4, 1936, intestate and without issue, leaving surviving her George E. Evilsizer, her husband, and J. O. Boggs and M. M. Boggs, her father and mother, as her sole heirs and distributees. On December 4, 1937, her estate was committed to Phil D. Phillips, as sheriff of Roane County, for administration. At her death, the intestate was seized of the following real estate: (1) an undivided one-half interest in two parcels of land in Roane County, containing 60 acres and 10 and 93/160 acres, respectively, conveyed to her and her husband by S. U. Evilsizer and wife for the sum of $1500.00 by deed dated May 26, 1924; and (2) a parcel containing 92 square rods conveyed to her for $29.00 by Holly Hoff and Kathleen Hoff by deed dated March 20, 1925. These three tracts were adjacent and constituted a single farm, the residence being on the tract of 92 square rods. Under date of February 15, 1927, an application in writing was

made to the Federal Land Bank by the Evilsizers for a loan of $1500.00. This application was on forms prescribed and furnished by the land bank; it contained a general description of the land to be mortgaged as security for the loan, and much other detailed information specifically required. It was signed by George E. Evilsizer and Florence Evilsizer. The loan was made, and the Evilsizers executed therefor an "amortization first mortgage note", dated July 6, 1927, in the amount of $1500.00 payable to the order of the land bank in 70 semiannual payments. A mortgage of the same date was executed by the Evilsizers to secure the debt and note, which specifically conveyed by metes and bounds the two tracts of land containing 60 and 10 and 93/160 acres, respectively, but also contained this sentence: "For a further description of the land hereby conveyed, reference is made to the application of the mortgagors for this loan and to the abstract of title made by the bonded abstractor and correspondence, which are the basis of this loan."

This suit was instituted in the latter part of 1937, the exact date not appearing from the record. The bill of complaint alleged the death of Florence Evilsizer, the commitment of her estate to the sheriff and the insufficiency of her personal estate to pay her debts; listed the real estate of which she died seized, and the plaintiff's claim; set up the existence of the Federal Land Bank's mortgage of record and stated upon information and belief that "all the semi-annual payments provided in said mortgage, maturing prior to this date, have been paid". It contained the usual prayer that the accounts of the personal representative be settled, that the land be sold for the payment of the debts of the intestate, and "* * * that the sale of her undivided one-half interest in said two tracts of 60 acres and 10 acres and 93 square poles may be sold subject to the mortgage debt of The Federal Land Bank." The Federal Land Bank filed an answer alleging that the said mortgagors were not delinquent in the payment of any installment on their debt

or the performance of any obligation assumed by them; that the amount of its debt remaining unpaid was $1395.87, and that the respondent objected "to any sale or renting of the lands or any parts thereof other than subject to the lien of said mortgage on all the lands covered thereby." This answer also stated, "that in accordance with the provisions of said act (Federal Farm Loan Act) Respondent pledged with the proper farm loan registrar said mortgage as collateral security for certain of its bonds that it had issued under said act and were then outstanding."

The cause was referred to a commissioner for a settlement of the personal representative's account, and the ascertainment of assets and liabilities of the estate. The commissioner reported that the balance of the land bank's claim, amounting to $1395.87, was the first lien on the intestate's one-half interest in the tracts of 60 and 10 and 93/160 acres, respectively; and that sale thereof could be made "only of the right of redemeption in said parcels of real estate and subject to said mortgage debt of said The Federal Land Bank of Baltimore", a conclusion apparently justified by the pleadings and following *Simmons Auto Co. v. Pursley,* 114 W. Va. 168, 171 S. E. 255. The liens subsequent in priority to the mortgage debt, in order, as shown by the report are: (1) a judgment recovered and docketed July 7, 1932; (2) a funeral bill to the amount of $300.00 and interest and two doctor bills to the amount of $50.00 each and interest; and (3) the balances on the funeral and doctor bills, and the plaintiff's claim.

To this report the Federal Land Bank excepted in writing by indorsement thereon before it was filed, because it allowed "any lien against the tract of 92 square poles which is prior to the lien of the Federal Land Bank", and because the report did not "find that the debt and lien of the Federal Land Bank is a first and prior lien to that of all other creditors mentioned in said report as to the 92 square pole tract of land." At the same time, the land bank filed its "amended and supplemental answer

and cross-bill" making the plaintiff and the other original defendants parties thereto. This cross-bill alleged that the Evilsizers, in their written application for said loan, offered the whole of said three tracts as security therefor, and that it was intended by them and by the land bank, that all three tracts should be included in the mortgage, but that through error and inadvertence of the scrivener of said mortgage the 92 rod tract was omitted, which error was not discovered by the land bank until the hearing before the commissioner. The prayer was that the mortgage be reformed so as to include the tract claimed to have been so omitted. No party appeared to this pleading except the plaintiff, Roane County Bank, which demurred on the grounds (1) that the relief asked for by the cross-bill was barred by laches; (2) that the error, if any, in said mortgage was that of the land bank itself; and (3) that rights of creditors had subsequently intervened, making such reformation as to them inequitable. This demurrer was overruled and the plaintiff filed an answer and reply, denying the material allegations of fact in said cross-bill. The land bank, in turn, filed what it calls its "second amended and supplemental answer and cross-bill", making defendants therein not only the parties to the bill of complaint, but also those who had proved claims before the commissioner. To this third pleading, the plaintiff again replied. With the pleadings in this condition, evidence was taken by the land bank and by the plaintiff jointly with creditors whose claims had been allowed by the commissioner. The cause was then submitted on the pleadings, the commissioner's report and exceptions thereto and the evidence taken on the cross-bills. The court found and decreed that the land bank was not entitled to the relief prayed for in its said cross-bills; overruled its exceptions to the commissioner's report and confirmed the same in toto. The decree further fixed the claims and liens on said land as reported by the commissioner, and ordered the sale of the 92 rod tract for the discharge thereof, but directed that no part

of, or interest in, the two mortgaged tracts be sold. This appeal was then allowed.

The land bank's exception is based on the theory that the mortgage, by referring to the application and abstract for more particular description of the land covered, must be held to cover all land which these documents indicate as having been intended to be mortgaged. It is clear to us, however, that the instrument cannot be so construed. It is true that another instrument or document, under some circumstances may be legally embodied in a deed or mortgage by appropriate words of reference, and such instrument need not be recorded. *Snooks* v. *Wingfield*, 52 W. Va. 441, 44 S. E. 277; *Pere Marquette R. Co.* v. *Graham*, 150 Mich. 219, 114 N. W. 58; *King* v. *Lane* (Tex. Civ. App.), 186 S. W. 392; 16 Am. Jur., Deeds, sec. 275, p. 594. But this rule is not available to the land bank. The reference in the mortgage is made only for "a further description of the land hereby conveyed," and not for the purpose of bringing additional land within the description or coverage of the mortgage. We are, therefore, compelled to disallow the contention that the mortgage, as recorded, is such as to cover the parcel of land in question. The exception to the commissioner's report was correctly overruled.

It may be fairly said that the evidence shows clearly that the 92 rod tract was offered by the Evilsizers as security for the proposed loan and was intended by them to be included in the mortgage, and that the federal land bank and its representatives acting in the matter fully believed that the description contained in the mortgage included all the Evilsizer land, or that it included the residence on whichever tract it might stand. The application, signed by the Evilsizers, shows that $1100.00 of the loan is to pay for "building residence on land", and that there is no residence except on the 92 rod tract. It also gives us part of the "value of permanent improvements located on the land proposed to be mortgaged * * * main dwelling—material, frame; year built 1924; present value $4,000.00; amount of insurance carried

$3,000.00." This description can apply to nothing else on any of the land except the residence on the 92 rod tract. And there is given under the heading of "value of buildings and improvements on land to be mortgaged, $4,550.00", which, from its amount, must necessarily include the residence. The husband fully and freely testifies that this was the intention, although the competency of his testimony for some purposes is challenged. George Evilsizer testified that the appraisers were shown through the residence in question by both himself and Mrs. Evilsizer. Finally, the successive insurance policies covering the residence were turned over to the land bank, pursuant to the terms of the mortgage and note.

But can a correction in the mortgage now be made to the disadvantage of the heirs and creditors of Mrs. Evilsizer? The cross-bills must be considered futile as to all creditors of Mrs. Evilsizer's estate. Those claims which were merely common or unsecured debts prior to the death of Mrs. Evilsizer, were, by that event, converted into the general character of liens. Code, 44-8-3, says:

> "All real estate of any persons who may hereafter die, as to which he may die intestate; or which, though he die testate, shall not by his will be charged with or devised subject to the payment of his debts, or which may remain after satisfying the debts with which it may be so charged, or subject to which it may be so devised, shall be assets for the payment of the decedent's debts and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied."

This section directly charges all debts of a decedent on his real estate, although by Code, 44-8-7, his personalty must first be exhausted. Of this section of the Code (then chapter 86, section 3, Code 1923), Judge Hatcher, in *Yokum v. Yokum,* 110 W. Va. 221, 224, 157 S. E. 579, 581, remarks that it "gave to the creditors liens (severally) on the decedent's real estate at the date of his death." Thus, there can be as to them no reformation of the

mortgage which would make it comprehend land not included in it as recorded. *Stickley* v. *Thorn*, 87 W. Va. 673, 106 S. E. 240; *Robinson* v. *Braiden*, 44 W. Va. 183, 28 S. E. 798; *Lough* v. *Michael*, 37 W. Va. 679, 17 S. E. 181, 470. Persons who extended credit to Mrs. Evilsizer, after the recordation of the mortgage, on the justifiable belief that the 92 rod tract was not included therein, have rights sufficient to make impossible the reformation of the mortgage to their detriment.

The general rule would be that the land bank could have any relief against the heirs to which it had been entitled against the ancestress. But we consider it unnecessary, for a decision of this case, to resolve the doubtful question as to whether reformation of the mortgage is barred by the coverture of Mrs. Evilsizer at the time the mortgage was executed. Her incapacity by reason of being a married woman was removed by the Code of 1931. Prior to that date, the mortgagee could not have had this relief against her. *Weekly* v. *Wagner*, 76 W. Va. 236, 85 S. E. 248, Ann. Cas. 1918 E, 630; *Slaven* v. *Riley*, 73 W. Va. 76, 79 S. E. 1024; *Wiseman* v. *Crislip*, 72 W. Va. 340, 78 S. E. 107; *Pickens* v. *Stout*, 67 W. Va. 422, 68 S. E. 354; *Simpson* v. *Belcher*, 61 W. Va. 157, 56 S. E. 211; *Amick* v. *Ellis*, 53 W. Va. 421; 44 S. E. 257; *Rosenour* v. *Rosenour*, 47 W. Va. 554, 35 S. E. 918. But for five years after she became *sui juris* by the operation of the Code of 1931, she retained the benefits of the mortgage, paid the semi-annual dues thereon, and turned over to the mortgagee for security the insurance policies covering the residence. This course has been pursued also by her heirs since her death, and they are the real parties against whom the reformation is sought. Under somewhat similar circumstances, the defense of coverture has been denied. *Hanley* v. *Richards*, 116 W. Va. 127, 178 S. E. 805; *Logan* v. *Gardner*, 136 Pa. 588, 20 A. 625, 20 Am. St. Rep. 939; *Ackerman* v. *Larner*, 116 La. 101, 40 So. 581; *Walker* v. *Arkansas National Bank*, 256 Fed. Rep. 1. The defense of laches is also questionable. It is true that the mortgage sought to be reformed by the cross-bills filed in 1938 was executed

in 1927; but the defense of coverture of the mortgagor could not have been questioned, if at all, until a consider-able time after her incapacity was removed by the Code taking effect January 1, 1931. Further, it is not at all certain that by reasonable diligence the mortgagee could have discovered from the papers in its possession that the dwelling was not on land included in the mortgage as written. We, therefore, prefer to rest our decision against reformation of the mortgage not on these doubtful questions, but on the clear rights of creditors.

The claim of the land bank to participate in the un-mortgaged assets of the Evilsizer estate is first advanced here. It was not made in any of the three pleadings of the land bank. The claim was not attempted to be proved before the commissioner; no appearance of any kind before him was made by the appellant. It did not except to the report of the commissioner on the ground that its debt was not allowed as a common claim, nor did it re-quest such allowance by the court. The whole assets of the estate consisted of these three parcels of land. From the beginning of this litigation the land bank has adhered to the position that it had, or should be decreed, a first mortgage lien on the whole real estate, not a first mort-gage as to two tracts and a subordinate or common claim against the residue. It asked for no alternative relief; in fact, it has asked only to be let alone with its debt and its lien as claimed by its pleadings. It had, and was allowed, a first lien on the two tracts; it asked for a first lien on the third tract also, and it asked for nothing else.

But it is urged that the land bank's formal prayer for general relief will entitle it to any decree which the facts justify, even if not specifically asked. This last resort must also fail the appellant. Not only did it fail to seek allowance of its debt as a common claim against the free assets, but it made no pretense at proving its debt as such. There was nothing whatever before the commissioner or court on which a claim other than the mortgage lien could have been allowed. Photostatic copies of the note and the mortgage indeed appear in the record, but they did

not come in except as exhibits with the first amended answer and cross-bill, and this pleading was presented to the court simultaneously with the commissioner's report. But, regardless of the time of presentation, the photostatic copy of the note was not competent evidence of a right to recover on the note. A copy, photostatic or otherwise, of a negotiable note does not prove its ownership, its non-payment, nor even its continued existence. This conclusion results from the very nature of the instrument involved, and from the rights of the parties and possible parties thereto. In the case of *Armstrong, etc. Co.* v. *Painter,* 75 W. Va. 393, 83 S. E. 1027, 1028, point four of the syllabus reads: "Full proof of a trust deed or mortgage lien requires production of the note secured, if there was one, or an excuse for its non-production." Judge Poffenbarger's discussion of this principle in the opinion in the *Armstrong* case at page 399, has this statement:

> "In foreclosure proceedings, the mortgagee must produce, in proof of his right, the bond, if there was one, or excuse non-production thereof. *Bergen* v. *Urbahn,* 83 N. Y. 49; *Munoz* v. *Wilson,* 111 N. Y. 301; *O'Bannon* v. *Myer's Ex'rs.,* 36 Ala. 551; *Goodhue* v. *Berrien,* 2 Sandf. Chy. (N. Y.) 630. This rule is a precaution against injury arising from recovery on the mortgage, after loss of all interest therein by assignment of the bond it secures. From necessity of proof of the fact, the necessity of allegation thereof, in some form, follows. The deed of trust in this case recited the execution of the note of the grantors for the amount of the debt it secured and the record is silent as to the ownership of the note."

See, also *Morgan* v. *Farmington Coal & Coke Co.,* 97 W. Va. 83, 124 S. E. 591. The Land bank, therefore, upon these considerations alone, must fail in its claim to be accorded the ranking of a common creditor against the unmortgaged assets. But, in addition to these controlling general principles, we have, since the Code of 1931, a statute which confirms by legislative enactment, these rules of evidence and equity procedure. Code, 56-7-6,

after providing that in any chancery cause pending before a commissioner under a decree of reference, a claimant may establish by affidavit his debt in the manner therein prescribed continues with this sentence:

> "In every case, however, where such debt or demand is evidenced by a contract in writing, or by a judgment or decree, or is secured by a lien, such affidavit or affidavits alone shall not be sufficient to establish such debt or demand; but such creditor shall also produce before such commissioner as additional proof the written evidence of such debt and shall file the same or a copy thereof certified by the commissioner, or a certified copy of such judgment or decree, and, if such judgment or decree be recorded in the judgment lien docket, a certified transcript of such recordation; and, if the debt or demand be secured by any other lien than that of a judgment or decree, he shall file the original or a certified copy of the writing by which such lien is evidenced."

Finding no error in the record of which the appellant can complain, the action of the trial court appealed from must be affirmed.

*Affirmed.*