## ANDREW VAN DEN BROOKS v. JOHN CORREON.

*Ejectment—Claims for improvements—Location by plat—Fence—Acquiescence in partition line.*

Act 180 of 1875 provides that where claims for improvements are to be filed in actions of ejectment, a copy of the claim must be served on the plaintiff at least "ten days before the first day of the term at which such cause may be tried." *Held,* that this claim must be made before the first term of court after joining issue, and if postponed until a new trial, evidence under such a claim is inadmissible.

Streets that have been opened in supposed conformity to a plat, and have been long acquiesced in, should be accepted as fixed monuments in locating lots or blocks contiguous thereto or fronting thereon.

Where parties claim under a common grantor who was in possession
   when he conveyed, the one who has a conveyance from him can
   maintain ejectment against the other.

A request to charge is properly refused if the charge, as given, correctly
   presents the matter.

A plaintiff in ejectment is not estopped by having put up a fence which
   he afterwards claims is wrongly located, unless it was built with the
   deliberate purpose, on both sides, of fixing the boundary, or unless
   its location is so acquiesced in by the other side as to bind the latter
   not to dispute the line so drawn.

Error to Bay.    Submitted April 19.    Decided April 25.

EJECTMENT.    Defendant brings error.    Affirmed

*Wisner & Draper* for appellant.

*A. McDonell* for appellee. Where streets laid out
according to a plat have been long acquiesced in they con-
trol the location of lots laid out with reference thereto:
*Twogood v. Hoyt* 42 Mich. 613; *Cronin v. Gore* 38 Mich.
381.

MARSTON, J.    This action of ejectment was brought to
recover possession of part of a lot of land in Bay City, and
the questions brought here arose on a second trial, the
defendant having paid costs and obtained a new trial under
the statute.

Previous to the second and after the first trial, the
defendant filed a claim to obtain compensation for improve-
ments under Act No. 180 of the Laws of 1875, p. 207.

On the trial, upon offering evidence under this claim
objection was made that this claim was not filed in time;
that it should have been filed previous to the first trial.
The court so held, and would not permit the claim to be
filed *nunc pro tunc*, and upon these rulings error is alleged.

The statute requires that a copy of this claim, "with
notice of the filing thereof, shall be served on the plaintiff
or his attorney, at least ten days before the first day of the
term at which such cause may be tried." Previous to the
passage of this statute and the act of 1873, no such claim

could have been made in this class of cases, so that a party in order to obtain the benefits of this statute must bring himself clearly within its provisions. The court should not enlarge it by construction. The effect of this claim when made is to create an issue as to the value of the improvements, and this in many cases may prove to be of equal if not greater importance, than the mere question of title to the premises and much more difficult to establish or meet with counter-proofs. It may therefore admit of some doubt whether so important an issue should thus be brought in at such a stage of the case.

There is however another and still stronger reason against the defendant's view. In actions of ejectment the party against whom judgment shall be rendered, upon payment of costs may have a new trial, as of course. If after a new trial has been obtained under this statute, new issues may be formed, and trial and judgment had thereon, a party may thus be deprived of a valuable right, as the vacation of such judgment would be discretionary with the trial court and not a matter of right. 2 Comp. L. § 6238.

This notice must be served at least ten days before the first day of the term at which such cause may be tried. The word "may" as here used does not refer to the term at which the cause shall be tried, but the term after which the cause was at issue and at which it could have been tried. This usually would be the first term after issue joined, and would have some reference to the buildings and improvements as they existed at the time suit was commenced.

This statute does not however in express terms limit the recovery to the value of the improvements made when the action was commenced, and if the view of the defendant is correct, he may go on and make valuable improvements on the premises, and when a second or subsequent trial is about to occur years thereafter, for the first time put in his claim and thus improve the plaintiff out of his property.

The plaintiff may file a request that the jury find and determine the value of the premises at the time of the trial, if no buildings had been erected or improvements made.

Act 180 of 1875. If therefore the defendant's view is carried out to its full extent, he by his own act could, in effect, compel the plaintiff to abandon the premises, as he would be unable to pay the value of the improvements put on after the commencement of the suit. This we think was not the intention of the Legislature in the passage of the act referred to, and we are of opinion that the court did not err in rejecting the evidence offered.

A careful examination of the first request to charge,* and

---

*Defendant requested the court to charge that "Plaintiff has failed to show that defendant was in possession of the south half of lot three in block eleven, according to Farmer's plat of Portsmouth, at the time this suit was commenced, and cannot therefore recover."

[This was the description, as given in the declaration, of one of the parcels of land for which the action was brought.]

The trial judge said in his charge :

"The plaintiff has described the property as lot 3 in block 11 of Farmer's plat of Portsmouth. Farmer's plat of Portsmouth, which is referred to, is the old plat of Portsmouth. That old plat has been introduced here in evidence. The first question is as to the location of this land, which upon this plat purports to be the south half of lot 3, of which the plaintiff claims the defendant withholds from him 23 feet on Water street, and 12½ feet along the bank of the river. Both parties derive titles to the lands and claim under the same grantor, which acknowledges and concedes the right of the grantor to convey. The grantor was Mr. Stevenson. In the first place you will consider whether this, as represented here, is in the locality of lot 3 of Farmer's old plat of Portsmouth. Mr. Johnson, a surveyor, is called to testify upon that subject, and who made this plat after having the land surveyed, and he comes upon the stand and is asked whether that lot 3, according to Farmer's map of Portsmouth,—the old map here in evidence,—embraces the south half of lot 3,—the land that Correon is shown to be in possession of by this survey. He tells you that, according to the width of the street and the blocks and lots, commencing at the south line or boundary of the plat, and going north, none of this would be in the south half, but a part of it would be in the north half of lot 3 ; but that all of the south half of lot 3 would be south of the south line occupied by Correon. And the counsel ask me to charge you that, that being the fact, this description does not cover the land actually in controversy here.

I cannot so charge you from the evidence. Mr. Johnson, if I understand his testimony, tells you that he has been a surveyor, and been acquainted with these lines and this plat for some 15 or 20 years; that by surveys made by him he has ascertained that the standard of measurement used in making this plat was larger than the legal standard by the proportion which he has given you, and that according to that standard this would be located as represented here. Twenty-second street, which is 100 feet north of lot 3, he takes as an established fact as being in its right position on Farmer's plat. That being so, he finds this lot located as placed here. There is fifty feet in lot one in width; there is fifty feet in lot two; there is twenty-five feet of lot 3, and then comes the south half of that lot, and he has shown you how much of

of the charge as given, fails to show any error committed upon that part of the case. The court closely followed the decision of this Court in *Pratt v. Lewis* 39 Mich. 7. It would be productive of very great mischief to attempt to go back of the practical construction and attempt from mere paper plats to locate premises therefrom. It is well known that where only boundary lines are surveyed, owing to inequalities in the ground and obstructions, strict accuracy cannot be obtained, and an attempt therefrom to subdivide, on paper, the land so conveyed, into city lots and streets, will be quite likely to result in creating difficulties. Where, however, streets have been opened and long acquiesced in, in supposed conformity to the plat, they should be accepted as fixed monuments in locating lots or blocks contiguous thereto or fronting thereon.

There was evidence in the case that both parties claimed title from a common grantor, and evidence was also introduced showing that at the time he conveyed he was in possession of the premises. This would be sufficient if true to entitle plaintiff to maintain the action if he had a conveyance. *Gamble v. Horr* 40 Mich. 561; *Bennett v. Horr* 47 Mich. 221.

---

that, according to this mode of determining the location, is in the occupation of Mr. Correon. Now, if such a standard of measurement was used in actually platting the land, although the measurement as indicated in the plat, would bring the lots further south,—would bring all of them further south (and according to this supposition it would bring all those lots further south),—yet these lots and lines are located as though that standard was right, having been adopted by the makers of this plat, and used by them, and they having established the streets and the lots by it, and the lots having been sold by the plat which was supposed to correspond with that measurement, you will have no difficulty, gentlemen, in settling this question. This has been settled by the Supreme Court upon a state of facts existing in another case where the location of Twenty-second street was in controversy. If the proposition suggested here is the correct one, Twenty-second street should extend fifty feet further south, and so would every other street less the proportion down to the south line, and every street and every block and every lot would have to be changed in their boundary from Twenty-second street to the south line of this city, in what was formerly Portsmouth. This question, as I say, has been settled by the Supreme Court in the case which has been referred to here. You will have no difficulty, gentlemen, upon this account in determining whether this is the true location of lot 3 as supposed here by Mr. Johnson."

The question as to a division fence and the effect thereof was fairly and properly submitted to the jury, and as this matter was covered by the charge it was not error to refuse the request of counsel upon the same matter.†

As we discover no error the judgment must be affirmed with costs.

COOLEY and CAMPBELL JJ., concurred.

---

†Defendant requested the court to charge that

"If plaintiff pointed out to defendant the fence he built as the true line, and defendant, not knowing to the contrary, acquiesced in this as being the true line, and both parties have actually occupied the premises up to this line for 12 or 15 years, they are bound by such conduct and plaintiff cannot recover."

The judge charged that

"If they * * deliberately, for the purpose of settling a disputed line, agreed that where that fence was built that was the line, and that they should respect it as the boundary line between them, then they are both bound by it if they went on afterwards and occupied, as claimed here, one on one side and the other on the other, each acquiescing in that settlement. There is no doubt about that, gentlemen, and in that case the question would arise, did these parties deliberately, in order to settle a dispute between themselves as to the true location of this line dividing the north from the south half of lot three,—did they settle upon where that fence was built? There is some apparent discrepancy in the testimony in regard to what that fence was and how it was built. * * * Now if there was no such settlement of the division line by the understanding of the parties, they must be governed by the true line, whatever it is, unless there has been some occupancy which entitled Mr. Correon to claim the benefit of the statute of limitations, which is not pretended in this case. The longer people acquiesce in a supposed line, the stronger is the presumption that they have agreed to settle it as the true line. This, it is claimed upon the part of Mr. Correon, has been acquiesced in as the true line for a great many years. It is denied upon the part of Mr. Van Den Brooks that he ever acquiesced in it in any other way than that he has not taken possession. Now what was the testimony in regard to this supposed agreement. If I understand Mr. Correon, when he came back from fishing in 1863, a short time after Mr. Van Den Brooks had bought this land, he found a fence there, and he inquired of Mr. Van Den Brooks, who built it. He says, 'I did.' 'Why?' 'Why, this is the line between us.' That does not constitute any agreement. If Mr. Correon had said, 'Well, we will settle this, if you say so, as the true line,' and Mr. Van Den Brooks had said 'Yes,' that would amount to an agreement. But Mr. Van Den Brooks merely saying 'this is the line,—I put it there because this is the line,' unless Correon acquiesced in it, unless he agreed that it should be considered and treated as the true line, so as to bind himself, he did not bind Mr. Van Den Brooks to regard it as such. You are to consider the facts in reference to this, and determine whether there was really any deliberate settlement of this line here where the old fence was built as the true line between those separate parts of lot 3."