## JOHN FLYNN v. PATRICK GLENNY.

*Boundaries between own lots—Re-survey.*

Re-surveys cannot be allowed to unsettle the lines of town lots after the lot-owners have established such lines in accordance with the stakes which they have found planted or recognized by authority, and in reliance on which they have purchased.

Appeal from Marquette. (Grant, J.) Oct. 11.—Oct. 24.

INJUNCTION bill. Defendant appeals. Affirmed.

*W. P. Healy* for complainant. If two proprietors verbally settle by implied agreement among themselves the dividing line of their respective lands and for some time act accordingly, neither can depart from the arrangement: *O'Donnell v. Kelsey* 10 N. Y. 419; especially if they took such reasonable measures to ascertain and establish the line between their lots that prudent persons would do : *Smith v. Hamilton* 20 Mich. 433 ; *Kellogg v. Smith* 7 Cush. 379.

*F. O. Clark* for defendant. Monuments control courses and distances, and the question in case of a boundary between lots is not how an accurate survey would locate them, but how the original stakes did : *Moore v. People* 2 Doug. (Mich.) 424; where parties occupy premises under mutual mistake as to the boundary lines, improvements not interfered with work no estoppel : *Cronin v. Gore* 38 Mich.

385 ; the mere building of a division fence by adjacent land owners does not preclude their contesting the boundaries so fixed, nor does their occupancy to the line of the fence unless it is adverse for the full period required by the statute of limitations: *Chapman v. Crooks* 41 Mich. 595, 598 ; *Van Den Brooks v. Correon* 48 Mich. 287, 288 ; where streets were staked at the time of the original survey, and monuments fixed, courts will leave the excess or shortage in each block to be dealt with by itself : *Twogood v. Hoyt* 42 Mich. 612 ; the question is one of location of the premises described which may be proved by any kind of evidence which is competent to prove any fact : 3 Washb. R. P. 348 ; *Purkiss v. Benson* 28 Mich. 540 ; if parties occupied up to an erroneous line for more than twenty years, supposing it to be the true line, and relying upon it, the line could not be then disturbed though wrong, but if they did not rely upon the first survey, but expected to settle the line by another when convenient, then twenty years' mere possession would not bar : *Bunce v. Bidwell* 43 Mich. 543.

COOLEY, J.   The bill in this case is filed to quiet the title of complainant to a small strip of land which defendant is endeavoring to recover from him.   The parties own and occupy adjoining lots in the city of Marquette, and the dispute concerns the location of the boundary line.

It appears that the original plat of the village of Marquette was laid out by the Cleveland Iron Company in the year 1854.   It was crossed by Front, Third and Fourth streets running east and west, and by Fisher, Rock, Superior and Spring streets crossing the others at right angles.   Each block was divided into lots, which were intended to be parallelograms, of equal size.   Subsequently at several different times adjoining territory was platted into blocks and lots, and the streets on the original plat, with the exception of Spring street, were extended by direct lines through the new plats.

In 1872 defendant purchased lot nine fronting on Fisher street between Third and Fourth, and complainant pur-

chased the adjoining lot numbered eight. Moriarty had previously become owner of lot ten, which was on the corner of Fisher and Fourth. The lots, according to the plat, were all fifty feet in width, and Moriarty had fenced off his lot of that width, beginning at the line of Fourth street where he and those who had previously bought lots upon it supposed it to be. When complainant purchased, he measured off one hundred feet from the supposed line of Fourth street, and took that as the point of beginning. That left fifty feet between himself and Moriarty, and this was taken possession of by defendant as being lot nine. Complainant and defendant, immediately after their purchases, built upon their lots respectively, and joined in building a fence on what they supposed was the dividing line between their lots. The line of this fence is the one which complainant now insists upon and seeks to maintain. The other lots fronting on Fisher street in the same block were numbered from one to seven inclusive, and these had all been sold off by the original proprietor. Lot five was purchased by one Steele in 1867, who was told by Peter White, the agent of the proprietor, that he would find stakes to indicate the boundary, and he did find stakes which located the lot with one hundred feet for lots six and seven between it and the premises now occupied and claimed by complainant as lot eight. One Neddeau purchased lot four the next year, and found it staked out in the same way as a fifty foot lot adjoining that of Steele. It is probable that these stakes were not the stakes planted at the time of the original platting, but there is nothing in the evidence to raise any suspicion that they had been planted without authority, or for any other purpose than to indicate the lot boundaries; and it is reasonable to infer that they were either the original stakes or others which had been planted in the same places when the original stakes had gone to decay. It seems very plain on the evidence that they were recognized by the original proprietor and its general agent as stakes which correctly designated the lot boundaries until all the lots fronting on

Fisher street, on the block now in question, had been sold and taken possession of by purchasers.

Recently, and after these parties had been in possession of their respective lots for nearly ten years, occupying with practical recognition of the fence they had jointly constructed as the dividing line, doubt has been thrown upon it by a survey which has been made of this part of the town, and which has led to the present litigation. A surveyor whose skill and competency is not questioned, taking for starting points certain monuments planted at the intersection of Front street with Spring street and Superior street, and also another at an intersection on one of the new plats, has demonstrated to his entire satisfaction, and by tests which in his opinion make his conclusions correct to a mathematical certainty, that the lot lines on this block are all wrongly located ; that Moriarty is some two feet over the line of Fourth street ; that defendant encroaches on Moriarty to the same extent, and complainant upon defendant. Defendant insists upon locating the dividing lines in accordance with this survey, and complainant contends for the correctness of the practical location.

If it were certain that the monuments which are now found at the intersection of Front with Spring and Superior streets were planted at the time the original plat was laid out, and that the survey of the plat was made with those monuments as the guides, and was itself mathematically correct, the conclusions which have been reached on the survey just made would no doubt be reliable and accurate. But we have no evidence that the monuments were planted when the platting was done : we are only told that they are monuments which are generally accepted and relied upon. In the absence of any evidence of the time when or the person by whom they were located, it is quite as supposable that there may have been an error in locating Front street when the monuments were planted, as that there was an error in locating Fourth street when the lots upon it were were purchased and taken possession of. It is pure assumption that there must necessarily be an error on Fourth street because

the line as located does not conform to the line as it should be measuring from the actual location of Front street.

It is also pure assumption that the original survey was mathematically correct. It is seldom or never that a town plat in a new country is made with perfect accuracy; and it is familiar knowledge in this State, if not elsewhere, that any attempt to make street lines and lot lines correspond with mathematical accuracy to the recorded plat after the lots have been occupied and improved, would disturb possessions in the most serious manner, and lead to infinite difficulty and litigation. Fortunately the rules of law do not admit of this. Purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines. The question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case they must govern, notwithstanding any errors in locating them.

We have said on this general subject in prior cases all that we deem necessary, and shall content ourselves with a reference to those cases. *Joyce v. Williams* 26 Mich. 332; *Stewart v. Carleton* 31 Mich. 270; *Cronin v. Gore* 38 Mich. 381; *Diehl v. Zanger* 39 Mich. 601; *Dupont v. Starring* 42 Mich. 492. The evidence is very strong that the parties to this litigation located the lines of their lots at the time they bought where they had been located in the original platting; and the evidence of the recent survey scarcely tends to cast a doubt upon it.

The decree of the circuit court was very clearly right and must be affirmed with costs.

The other Justices concurred.