BRUDIN *v.* INGLIS.

1. BOUNDARIES—ASCERTAINMENT—EVIDENCE.

   Evidence in ejectment, in which the location of the boundary line between two lots as anciently platted is in controversy, that old stakes, made of material such as was used only by the early surveyors, were found driven into the ground at the points at which defendant claims the line to be, and that other stakes, some similar, some evidently placed by later surveyors, were also found at intervals conforming to other lot lines as shown by the plat, is sufficient, in the absence of proof of different lines, to entitle defendant to a directed verdict.

2. SAME—OVERPLUS OF LAND—MONUMENTS.

   Mere proof of an overplus of land is insufficient to change boundaries that are marked by monuments.

Error to Wayne; Frazer, J.   Submitted June 8, 1899. Decided September 27, 1899.

Ejectment by John F. Brudin against Thomas R. Inglis.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Thomas Hislop*, for appellant.

*Rowland M. Connor*, for appellee.

HOOKER, J.   We gather from the record that in 1835 a piece of ground called the "Porter Farm" was platted into lots, or at least that a plat purporting to lay said ground into lots was recorded in the register's office.   We have a sketch of said plat in the record, and infer that each lot was to be 600 feet square.   There is nothing upon the plat or in the proof that indicates where the Porter farm was, or that the lots were ever staked out.   Some years later another plat was made, and purports to be the subdivision of lots 51, 50, 47, and N. ½ of 46, Porter farm,

city of Detroit. The plaintiff is owner of lot 3, and defendant owns lot 2, of this subdivision. The former has brought ejectment to recover about three feet of ground which lies upon one side or the other of the true boundary between these lots. Two questions were raised: (1) Where is the true boundary? (2) Has either party acquired title to the three feet through the settlement of the boundary line by consent and acquiescence? We may eliminate the latter question, for we think there is no proof which would justify such a conclusion. In fact, the contrary affirmatively appears. The defendant claimed that the testimony conclusively showed that the true boundary line was in accordance with his claim, and asked the court to direct a verdict in his favor. This was refused, and the jury found for the plaintiff.

Plaintiff's theory is that the south boundary of lot 1 was an old fence, called the "Lord Fence," which marked the north boundary of premises owned by Lord, and that giving to lots 1 and 2 the width shown upon the plat brings the disputed line where he claims it to be. The defendant claims that the distance from the street called "Lambie Place," or "Leverette Street," along the north side of the block, shown by the plat, to the Lord fence, is actually three feet more than is shown on the plat, and that this surplus either belongs to lot 1, which adjoins the Lord fence, or that it was not included in the land platted. There is nothing on the face of the plat to show that the subdivision was intended to extend to the Lord fence or line, unless we are able to say that the south line of the parcel platted extended to such fence or line. The evidence does show conclusively that between Lambie place and the old fence, as they exist upon the ground, there is more land than the plat shows to be contained in the intervening six lots. The defendant maintains that, if the surplus belongs to the plat, it increases lot 1 beyond the width shown in the plat; if it does not belong to the plat, the south line of lot 1 is three feet north of the Lord fence; and that in either case the boundaries of lots 2 and 3 are

the same, and in accordance with his claims. On the other hand, the plaintiff claims that the old fence is the south boundary of the plat, and lots should be measured from there; that it is not certain that Lambie place is located in conformity to the plat. He contends, further, that there is no evidence that the lots were actually staked out when the plat was made.

It is obvious that, if it could be conclusively shown that these lots were staked out when platted, such monuments would be conclusive of the question; and if this cannot be shown, but other monuments establishing any given points as platted can be found, such monuments would furnish starting points to aid in arriving at the true boundary between these lots. In the absence of either, old monuments indicating user may be resorted to for light upon the subject. There is testimony, which is undisputed, that stakes were found driven in the ground, marking the points at which the defendant claims this line to be. It is shown that they were old stakes, made of timber not used recently for such purposes, and such stakes as surveyors recognize to be those used by the early surveyors. Nothing indicates any other purpose in driving these stakes than to mark that line. Moreover, at intervals, conforming to the other lot lines as shown by the plat, were other stakes,— some similar, some evidently placed there by later surveys. Taken together, these are cogent evidence of the location and perpetuation of those lines. While this proof does not amount to demonstration, it is ample to support a verdict; and, unless met by testimony tending to show that the lines were elsewhere, a verdict should have been directed for the defendant. If there was such proof, it was a question for the jury; but the fact that the proof of the defendant was not demonstrative proof would not justify submission to the jury.

We must therefore examine the case to ascertain if there was contradictory proof. It may be said that there is evidence tending to show that the Lord fence marked the north line of the Lord property; but that does not

prove that it marked the south line of the lots platted. Unless it did so, whether the land north of such fence belonged to those who made the plat or not, we cannot say that it was included in the plat, or that the fence was intended to mark the south boundary of lot 1. Hence, though we might say that we would start with lot 1, we could not say that the fence was the south line of that lot, and to permit a jury to do so would be to allow them to speculate upon the question, without proof. Moreover, the width of lot 1, as shown in the plat, would have to yield to the monuments fixing the north line of that lot, if there were such monuments, in case it could be said that the subdivision extended to the fence. It requires something more than proof of an overplus of land to change boundaries that are marked by monuments..

We are of the opinion that the proof tended to establish the line as asserted by the defendant, and that there was no testimony to the contrary. The judgment is reversed, and a new trial ordered.

The other Justices concurred.