PERE MARQUETTE RAILWAY CO. *v.* TOWER MOTOR
TRUCK CO.

1. BOUNDARIES — PLATS—MEASUREMENTS FROM SECTION LINE IN
ABSENCE OF MONUMENT.

Where the plat of a subdivision does not show that its
western boundary was fixed by the location of a certain
street or the blocks to the west thereof, then its location
should be determined by measurements from the section
line, a starting point clearly established.

2. SAME—EVIDENCE OF MONUMENTS—SUFFICIENCY.

Evidence *held*, to show absence of any stake, monument,
or division line set at the time any of the original sur-
veys were made which justified departing from measure-
ment from the section line, in determining the boundaries
of lots in a subdivision.

3. SAME — RECOGNIZED BOUNDARIES MAY NOT BE DISTURBED BY
NEW SURVEY.

Where starting points, such as section corners or quarter
posts, cannot be found, purchasers have a right to rely
on stakes planted or fences built which have long been
recognized as indicating lot lines, and no subsequent
survey establishing a starting point should be allowed to
unsettle such boundaries; nor may mistakes made in the
measurement of original surveys be corrected to disturb
boundaries thus fixed.

Error to Montcalm; Davis (Frank D. M.), J. Sub-
mitted January 30, 1923. (Docket No. 95.) Decided
March 22, 1923.

Ejectment by the Pere Marquette Railway Company
against the Tower Motor Truck Company. Judgment
for plaintiff on a directed verdict. Defendant brings
error. Reversed.

*Griswold & Cook,* for appellant.

*Hawley, Eldred & Gemuend,* for appellee.

SHARPE, J.   The original plat of the city, then village, of Greenville, known as Rutan's plat, was recorded in the register of deeds' office in Montcalm county on May 31, 1856.   It included lands on sections 9 and 10 in town 9 north, range 8 west.   The line between these sections appeared on the plat as Lafayette street.   It was 4 rods in width.   Clay street, 4 rods wide, lies 24 rods east of Lafayette, and Webster street, the eastern boundary of the plat, 3 rods wide, was 23 rods east of Clay.   The land to the east of Webster street was afterwards platted by what is known as Edwards' addition.

On April 9, 1873, a part of this land, designated by blocks, was subdivided by E. B. Edwards, the owner thereof, the plat therefor being known as "Edwards' third addition to the village of Greenville."   This plat was recorded on April 9, 1873.   The dedication, so far as it relates to the property involved in this action, reads:

"'Edwards' third addition' includes all of lot No. (6) and all that part of lots No. five (5) and seven (7) lying east of Webster street in the village of Greenville (now city of Greenville) except block 'A' which has been previously recorded, and is known as 'Edwards' addition to the village of Greenville,' said lots (5) (6), and (7) being on section ten (10) town nine (9) north of range eight (8) west."

Smith and Court streets are east of Webster street. The width of the streets and lots in the blocks is plainly marked on the plat.   The lots on the east side of Court street run east and west and are numbered from one to seven inclusive.   On January 21, 1881, Mr. Edwards conveyed to the Detroit, Lansing & Northern Railroad Company, plaintiff's grantor, a

tract of land in Edwards' third addition, which included Court street and four rods in length off the west end of said lots one to seven, inclusive, fronting on Court street—

"All of said above mentioned streets, lots and blocks of land being on Edwards' addition to Greenville according to the plat thereof, recorded in the office of the register of deeds of Montcalm county, aforesaid, in liber thirty of deeds on pages 216, 217 and 218 and being the same lands heretofore contracted by said Edwards to the president and secretary of the Ionia and Lansing Railroad Company on the 21st day of May, A. D. 1869. Which contract is mentioned in the descriptions of land of said plat as recorded as aforesaid."

Claiming that defendant was wrongfully in possession of a part of this four-rod strip, plaintiff brought this action of ejectment and, by the judgment, entered upon a verdict directed by the court, was adjudged to be entitled to recover the possession of a strip one and one-half feet wide on the easterly side thereof. Defendant reviews the judgment on assignments of error claimed to have been committed in the direction of the verdict for plaintiff, in refusing to direct a verdict for defendant, and in the admission and rejection of testimony.

The defendant owns the balance of lots one to seven and has substantial buildings and improvements on them and on the land adjoining on the east. Its grantors acquired title to at least a part of this land in 1871, before the plat of the third addition was recorded. The only question in dispute is from what point measurements should be taken to ascertain the boundary line between plaintiff's and defendant's property. In some way, not explained in the record, the eastern boundary of Webster street, as determined by the buildings and sidewalks now thereon, is about one and one-half feet farther to the east than the dis-

tances stated on the Rutan plat would place it.   Counsel for plaintiff concede that if measurements be made from Lafayette street, the defendant is within its boundary line, but insist that the actual location of Webster street must be taken as the starting point for making such measurements.

Copies of the plats do not appear in the record. There is attached to defendant's brief a blueprint which purports to show that part of the Rutan plat and of the Edwards third addition from Lafayette street east to the land in dispute.   Plaintiff's counsel apparently concede its accuracy by their reference to it in their brief.   From this blueprint it appears that Edwards' third addition platted lands to the east of Webster street as fixed by the Rutan plat.   We do not think any other intent can be inferred from the language of the dedication.   It but made it clear that blocks east of Webster street, as it appeared on one or both of the former plats, were being subdivided.

Mr. Bristol, an engineer in plaintiff's employ, attempted to fix the boundary lines of its property in 1897-98.   He began his work on the assumption that the railroad track was in the center of Court street and testified that he found some old fences apparently indicating lot lines and one stone in the ground which he assumed to be a monument set by a surveyor.   He found no stakes or other evidences of the original survey.   From his observations and the measurements he made he "determined that the center line of the track was the center line of Court street."   He made no measurements from Lafayette street.   He testified that he went west as far as Webster street but found little there to aid him as the street was not fenced at that time.   Mr. Tefft, another of plaintiff's engineers, sought to locate plaintiff's lines in 1918. He "began on a section line between sections 9 and

222—Mich.—13.

10, the center of Lafayette street and carried that through to the railroad property." By taking "halfway distance between curb lines on the pavement" at the corner of Webster and Grove streets, he discovered that Webster street was not located on the ground as indicated by the plats.

As we have said, copies of these plats do not appear in the record. If the plat of Edwards' addition does not show that its western boundary was fixed by the location of Webster street, or the blocks to the west thereof, on the Rutan plat, it would then be important to determine its actual location at the time the plat of the third addition was made. We must assume from the record that it was so fixed and, if so, its location must be determined by measurements from Lafayette street, a section line, a starting point clearly established. With the plats before him, Mr. Tefft determined that it was from this point he should start. His measurement therefrom showed the division line between the properties of plaintiff and defendant to be where defendant claims it is. There is no such proof in the record of any stake, monument or division line set at the time any of the original surveys were made as justified departing from such measurement. Where starting points, such as section corners or quarter posts, cannot be found, purchasers have a right to rely on stakes planted or fences built which have long been recognized as indicating lot lines, and no subsequent survey establishing a starting point should be allowed to unsettle such boundaries. Mistakes made in the measurement of original surveys may not be corrected to disturb boundaries thus fixed. Mere proof of an overplus or shortage in the length or width of streets, lots or blocks is insufficient in itself to .change boundaries distinctly marked when the original survey was made. Nor may a new survey made from an assumed starting point be used

therefor.   The cases relied on by counsel for plaintiff (*Diehl* v. *Zanger*, 39 Mich. 601; *Flynn* v. *Glenny*, 51 Mich. 580; *Beaubien* v. *Kellogg*, 69 Mich. 333; *Carpenter* v. *Monks*, 81 Mich. 103; *LeCompte* v. *Lueders*, 90 Mich. 495 [30 Am. St. Rep. 450]; *Brudin* v. *Inglis*, 121 Mich. 410; *Breakey* v. *Woolsey*, 149 Mich. 86) so hold.   These decisions, however, have no application to the facts presented by this record.   The grantors of both plaintiff and defendant purchased, or contracted to purchase, their lands before the plat of Edwards' third addition was recorded.   The line in dispute might then have been accurately determined by measurements made from Lafayette street.   We are not here concerned with a dispute between adjoining landowners who have relied on the stakes or other monuments set when the original survey was made or on fences long acquiesced in as boundary lines between lots.

In view of a new trial, it seems necessary to pass upon the refusal of the court to submit defendant's claim of adverse possession to the jury.   It is a little difficult to understand the facts testified to and the estimates of distances as stated, owing to the plats not being made a part of the record..   Without reviewing the testimony, which we have carefully read, it is sufficient to say that we think this question should have been submitted.

The judgment is reversed and a new trial granted, with costs to appellant.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.