MILLER v. MICHEL.

1. BOUNDARIES—EVIDENCE—QUESTION FOR JURY.
   In ejectment, where the testimony as to the location of
   the boundary line between two city lots was in dis-
   pute, the question was one for the jury.

2. SAME—TRIAL—INSTRUCTION—REQUESTED INSTRUCTION OPEN TO
   OBJECTION THAT IT AMOUNTED TO DIRECTION OF VERDICT.
   In ejectment, where the boundary line between two city
   lots was in dispute, and testimony by plaintiffs' witness
   that the lines of the lots in the block involved were never
   right opposite those across the street was contradicted
   by defendants' witness, who further testified that the
   line between the lots in question was where defendants
   claim it to be, a requested instruction by defendants that
   certain streets long opened and acquiesced in should be
   accepted as fixed monuments in locating lots, held, prop-
   erly refused, as open to the objection that the jury could
   well have considered it as a direction to find a verdict
   for defendants.

3. SAME—INSTRUCTION AS TO ORIGINAL STAKES.
   An instruction that purchasers of town lots have a right
   to locate them according to the stakes which they find
   planted and recognized, and that no subsequent survey
   can ever unsettle their lines, and that the question is
   not whether the stakes were where they should have been
   had the platting been done with absolute accuracy, but
   whether they were planted by authority and the lots
   purchased and taken possession of in reliance upon them,
   held, to correctly state the law.

Error to Muskegon; Vanderwerp (John ), J.    Sub-
mitted April 16, 1924.    (Docket No. 88.)    Decided
June 2, 1924.

Ejectment by Phineas K. Miller and another against

227—Mich.—32.

Frederick B. Michel and another.   Judgment for
plaintiffs.   Defendants bring error.   Affirmed.

*John G. Anderson,* for appellants.

*Cross, Foote & Sessions,* for appellees.

SHARPE, J.   Plaintiffs are the owners of lot 32 and
defendants of lot 31 of block 1 of McGraft & Mont-
gomery's addition to the city of Muskegon.   Plaintiffs
bring ejectment to recover possession of a strip of
land 7 feet wide, which they claim is a part of lot
32, and of which defendants have possession.   The
dispute is over the location of the boundary line be-
tween these lots.   Lot 32 lies to the east of lot 31.
Defendants here review by writ of error a verdict and
judgment entered thereon in favor of plaintiffs.   The
errors assigned relate to the admission of proof and
to the charge of the court.

This plat was made in 1881.   It consists of 9
blocks.   Block 1 has in it 36 lots of varying lengths.
They lie on a bluff fronting on Lake Muskegon.
There is a railroad right of way at the bottom of the
bluff near to the water's edge.   The total length of
block 1 as it fronts on Lake street, as shown by the
plat, is 1,732 feet.   Plaintiffs claim that by actual
measurement it is but 1,725 feet.   The lots in this
block are of the uniform width of 50 feet, except lots
18 and 27, which are 66 feet wide.   Lot 27, as ap-
pears by the plat, is directly across from Mill street,
which separates blocks 3 and 4 on the plat, and lot
18 is directly across from Schuyler street, which
separates blocks 4 and 5.   The distance between these
streets as platted is 400 feet.

Josephine Gunn, a teacher in the public schools of
the city, testifying for plaintiffs, said that her father,
O. H. Cole, bought lot 32 in the spring of 1883 and
built a house on it; that the original stakes marking
the lot lines were then in place at the front and rear

of the lot; that her father built "a low board fence on each side of his property to mark the boundaries of the lot;" that there was room for a driveway between the house and the fence on the west; that she lived in the house until 1891 and nearby until 1894, when she left the city. On her return in 1909, some of the posts of the fence, or others in the same place, were still standing; that about two years before the trial was had she was asked to and did go to the property and found a stake which she presumed was "the same old stake" at the same place where a stake was when the fence was built.

John J. Pearce, who purchased lot 32 from Mr. Cole in 1900, testified that this fence was then intact, and that he used the strip between the house and the fence for a lawn and driveway. Other witnesses testified as to the location of this fence.

Archie Shonat, a graduate civil engineer of standing and experience, made a recent survey of the lots in block 1 at the request of several lot owners. He testified that he found—

"the stone corner as set by the government survey many years ago—and the quarter post on the section line, which is mentioned in this original plat. At this point I found an iron pipe—an iron stake."

He testified that he also found at one point "a piece of a wooden stake about three or four inches long, as the old point of the stake." He found a shortage in the block of 7 feet, and divided it proportionally among the several lots. At the line between 32 and 31, as determined by the plan pursued by him, he found an old post with a vine over it and "in order to see by it we had to push it over."

George S. Lovelace, who came to Muskegon in 1882, owned property in this addition and frequently passed the property in dispute, testified that "the usual platting stakes were visible in many places."

For the defense Clifford S. Gamble, a surveyor who assisted in making the plat and who had lived in Muskegon for 42 years, testified that lots 18 and 27 were directly across from Schuyler and Mill streets, as shown on the plat; that these streets have been long in use and recognized and acquiesced in as located according to the plat; that they are correctly located; that, using the corner of Mill street as a starting point, he determined by measurements that the line between these lots is where defendants claim it to be. Other witnesses testified that the boundaries of the lots directly across from these streets were and have always been in direct line with the boundaries of these streets. Several witnesses for defendants also testified that the fence built by Cole was close up to his house and was maintained there but a short time.

There was no claim made of adverse possession. Under the proofs, it was for the jury to determine the location of the boundary line between these two lots. Defendants requested the following instruction:

"I charge you that Mill street and Schuyler street having been long opened and acquiesced in should be accepted by you as fixed monuments in locating the lots and blocks contiguous thereto and fronting thereon, and the lines of those lots cannot be relocated by any subsequent survey thereof."

The rule is well established in this State that—

"Streets that have been opened in supposed conformity to a plat, and have been long acquiesced in, should be accepted as fixed monuments in locating lots or blocks contiguous thereto or fronting thereon." *Van Den Brooks* v. *Correon,* 48 Mich. 283.

It was quoted with approval in *Pere Marquette R. Co.* v. *Graham,* 150 Mich. 219.

The lots in question neither front on these streets nor are they contiguous thereto. Mr. Pearce testi-

fied positively that the lines of the lots in block 1 "were never right opposite" those across Lake street. This instruction, while in accord with the rule stated, could well have been considered by the jury, in view of the testimony of Mr. Gamble, as a direction to find a verdict for the defendants, and we do not think it should have been given.    In defendants' second and third requests the same peremptory instruction as to the controlling effect of the location of these streets was presented.    There was no error in their refusal.

Error is assigned upon the following portion of the charge:

"It is the law, gentlemen, that purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines, and the question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting was done with absolute accuracy, but it is whether they were planted by authority and the lots were purchased and taken possession of in reliance upon them.    If such was the case, they must govern, notwithstanding any errors in locating the stakes."

It is urged that the jury were thereby instructed "that the location of the fence determined the boundary of these lots."    This instruction was but stating in other words a request preferred by the defendants' attorney:

"Purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines."

The instruction given correctly stated the law.

"Purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines.    The question afterwards is not whether the stakes were where they should have

been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them.    If such was the case they must govern, notwithstanding any errors in locating them."    *Flynn* v. *Glenny*, 51 Mich. 580.

Whether the fence was placed on a line between stakes "planted and recognized" as original lot stakes was a disputed fact.    The charge very fully presented the claims of the parties and fairly stated the rules of law by which the jury should be governed.

The errors assigned on the admission and rejection of proof have been considered.    They do not merit discussion.

The judgment is affirmed, with costs to appellees.

CLARK, C. J., and MCDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.