NORDBERG v. TODD.

1. BOUNDARIES—DEFINITE MONUMENTS SHOULD CONTROL.
Where parties agree upon definite monuments which fix the boundaries of a parcel of land conveyed by one or the other, such monuments should control.

2. SAME—TESTIMONY AS TO AREA NOT CONCLUSIVE WHERE DEFINITE MONUMENTS ESTABLISHED.
Where the testimony established definite monuments, testimony of the parties relative to the area of the land contained within the boundaries is not conclusive, especially in view of the rule of law that quantity in any description must generally give way to fixed lines and monuments.

3. PLEADING—RELIEF GRANTED—CONSTRUCTION OF DEED—REFORMATION OF INSTRUMENTS.
While plaintiffs' bill for construction of deed does not specifically ask for reformation, such relief might well be granted under their prayer for general relief, and especially where the issue of reformation is definitely raised by defendant's cross-bill wherein reformation of the deed is prayed.

4. COSTS—ATTORNEY'S FEES—COURT RULES.
In fixing costs in equity case court below should have followed former Circuit Court Rule No. 64, and fixed attorney's fee at $30 instead of at $75.

Appeal from Kent; Dunham (Major L.), J. Submitted April 14, 1931. (Docket No. 70, Calendar No. 35,560.) Decided June 1, 1931.

Bill by Alfred Nordberg and another against Jennie Todd for construction of a deed. Cross-bill by defendant against plaintiffs to reform the deed. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

As to effect of compromise agreement locating division line at place known not to be the true boundary, see annotation in 10 L. R. A. (N. S.) 610.

*Knappen, Uhl, Bryant & Snow,* for plaintiffs.

*Linsey, Shivel & Phelps* and *John H. Vander Wal,* for defendant.

NORTH, J.   This bill of complaint was filed for the purpose of securing construction of a deed establishing a line between the properties of these respective parties and obtaining injunctive relief. Defendant presented a cross-bill seeking affirmative relief including reformation of her deed to plaintiffs.   On September 8, 1924, the defendant executed to plaintiffs a warranty deed of a triangular piece of property east of Grand Rapids and bordering Cascade road on the north, which deed contained the following description:

"Beginning on the east line of and 589.3 feet south of northeast corner of southwest quarter of section five (5), said township of Cascade, thence south along the east line of premises owned by first party 1,250.7 feet to Cascade road, so-called; thence northwesterly along said Cascade road 548.2 feet; thence northeasterly in a direct line 922.4 feet to place of beginning, being in all 5.4 acres, more or less, and all on section five (5), township of Cascade, Kent county, Michigan, subject, however, to all roadway rights of said Cascade road, so-called."

About three months prior to her deed to plaintiffs defendant had released a 50-foot right of way north of the center line of Cascade road.   Prior to this the north half of this highway was only 33 feet in width; but this and a like addition on the south side made Cascade road 100 feet in width.   At the time of her conveyance to plaintiffs defendant's deed for this highway widening was not recorded but all parties concerned had full knowledge thereof. In contemplation of preparing the deed plaintiffs

employed Williams and Works to survey and stake out the parcel about to be purchased. The following from the opinion filed by the trial judge is sustained by the record:

"These surveyors set an iron stake at each of the three corners of the property, the stake at the southwest corner being 548.2 feet northwesterly from the quarter line measuring along the edge of the old or 33-foot right of way. The surveyors at that time also set out a row of some six wooden stakes extending from the iron stake in the southwest corner, northeasterly to the place of beginning, on the north and south quarter line. The defendant owned the balance of the land to the west of the premises conveyed to the plaintiffs, and lived thereon.

"At the time the deed was prepared by the defendant's attorney the parties had before them the sketch prepared by Williams and Works which showed measurements as follows, the northerly point of the triangle not being in any dispute:

"Distance from the northerly point of beginning to the center line of Cascade road 1,250.7 ft.

"Distance from northerly point of beginning to edge of 33-foot roadway 1,202.7 ft.

"Distance from quarter line to southwest corner of property 548.2 ft. Measured along the edge of the 33-foot road.

"Distance from southwest corner of property starting on the edge of the 33-foot road, northeasterly to point of beginning 866.6 ft.

"This last line, extended south to the center of the road, is shown on the sketch as 922.4 feet. The sketch also showed the acreage included within the triangle, having as its base the 548.2 measurement on the edge of the 33-foot road, as 5.4 acres.

"The plaintiffs paid for the property $1,080, being 5.4 acres at $200 per acre.

"The plaintiff took possession and occupied the land up to the surveyors' row of stakes on the west, which stakes remained standing for several months. He plowed the land to within three or four feet of this westerly line, and planted fruit trees thereon. The evidence shows that Mrs. Todd knew that the plaintiff was claiming under the deed the land to the surveyors' stakes, and that she acquiesced and consented thereto until about three years after the deed was given.

"On or about July 1, 1929, the defendant caused to be erected the present fence on the westerly portion of plaintiffs' premises, which fence, at the southern end thereof, was 529.86 feet northwest of the north and south quarter line measuring along the edge of the 33-foot highway (18.34 feet southeasterly of iron stake)."

It thus appears that the southerly end of the fence erected by defendant is a little more than 18 feet southeasterly of the location of the iron stake which plaintiffs claim marked the southwest corner of their parcel. The controversy presented involves a wedge-shaped piece of land lying between the two disputed westerly boundary lines of plaintiffs' property, which lines converge to a common point at the north but diverge so at the southerly line of the property they are 18.34 feet apart. These conflicting claims arise from the fact plaintiffs assert that their southerly line coincides with the northerly line of the 33-foot highway, but defendant contends that it coincides with the center line of the highway. It will be noted that the description in the deed is from the point of beginning (about which there is no dispute), "thence south along the east line of the premises owned by first party 1,250.7 feet to Cascade road, so-called; thence northwesterly along said Cascade road 548.2 feet;" the first meas-

urement would extend the line to the middle of Cascade road. This circumstance surely tends to sustain defendant's claim that the southerly boundary line extended along the center line of the highway rather than the northerly line. It should also be noted that the next provision in the deed is "thence northeasterly (from the southwest corner of the parcel) in a direct line 922.4 feet to the place of beginning, being in all 5.4 acres, more or less." Without doubt the figures in the description were taken from the sketch prepared by Williams and Works; but from the testimony it seems equally clear that by mistake of the conveyancer the sides of the triangle were extended to the center of Cascade road, while the base was the distance between the sides along the northerly line of the road rather than along the center line. In contending that the southerly line of this parcel is the center of the highway the defendant relies upon and insists upon the application of the following rule of law, as well as upon the description in the deed:

"We hold the correct rule to be that a conveyance of land bounded on a highway, street, or alley carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time of conveyance owned to the center and there are no words in the deed showing a contrary intent, whether the dedication of the highway, street, or alley has been accepted or not, and whether it has been opened or not." *Loud* v. *Brooks,* 241 Mich. 452.

Notwithstanding the rather persuasive circumstances relied upon by appellant, we are convinced after a careful consideration of the testimony that the trial judge was correct in his finding that prior to the conveyance the "surveyors set an iron stake at each of the three corners of the property," and

beyond question the parcel thus marked was the parcel that the deed was intended to convey and it should be so construed if possible. Where parties agree upon definite monuments which fix the boundaries of a parcel of land conveyed by one or the other, such monuments should unquestionably control. *Diehl* v. *Zanger,* 39 Mich. 601; *Flynn* v. *Glenny,* 51 Mich. 580; *Miller* v. *Michel,* 227 Mich. 497.

Plaintiffs' contention is also supported by the conduct of these parties immediately following the conveyance in mutually acquiescing in the location of the westerly boundary line as indicated on the Williams and Works survey sketch. 2 Tiffany on Real Property (2d Ed.), § 444; *Monfort* v. *Stevens,* 68 Mich. 61. It is worthy of notice that in the instant case the iron stake placed at the southwesterly corner of the parcel together with the agreed point of beginning would definitely fix the location of the westerly line regardless of whether that line extended to the center of the highway as defendant contends or only to the northerly line as plaintiffs contend.

In addition to the foregoing, the defendant on cross-examination testified she was willing to be bound by the Williams and Works survey. To some extent she retracted this on her redirect-examination, but it seems that her statement on cross-examination, which we quote, was not inadvertent:

"*Q.* I am asking you now if you were satisfied that Mr. Nordberg was to have the land, by this deed that was made, that land between the three iron stakes marking off the triangle of the property?

"*A.* Certainly, where Mr. Williams' iron stakes was, yes."

Each of these litigants offered testimony relative to the area of the land contained within the bounda-

ries contended for by the respective parties. This testimony under the circumstances of this case is not at all conclusive either way; especially in view of the rule of law that quantity in any description must generally give way to fixed lines and monuments. *Keyser* v. *Sutherland*, 59 Mich. 455. The testimony taken as a whole, especially that establishing definite monuments, convinces us that the westerly line of plaintiffs' property should be located in accordance with their contention. In other words, this deed should be construed as extending plaintiffs' southerly boundary line along the northerly line of the 33-foot road northwesterly from the quarter line a distance of 548.2 feet.

The appellant asserts that the appellees are really seeking in this court reformation of the deed rather than a construction of it; and it is urged such relief should not be granted because it was not prayed for in the bill of complaint nor urged in the circuit court. In the instant case it is of little consequence whether the relief granted is by way of construction of the deed or by its reformation. While plaintiffs' bill does not specifically ask for reformation, such relief might well be granted under plaintiffs' prayer for general relief, especially since the issue of reformation was definitely raised by defendant's cross-bill wherein reformation of the deed was prayed.

Complaint is made by appellant that an attorney fee in the sum of $75 was allowed to plaintiffs as taxable costs in the circuit court. We think this provision in the decree cannot be sustained. Instead the court should have followed former Circuit Court Rule No. 64, which fixed the attorney's fee in the amount of $30. Subject to this modification, the decree of the lower court is affirmed, with costs.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.