McMURTRY *v.* ABBEY.

1. Deeds—Description—Plats.
   A plat becomes an essential part of the description of the land conveyed in a deed where referred to therein.

2. Boundaries—Courses and Distances—Landmarks.
   Generally courses and distances, quantities and measurements are controlled by natural or fixed landmarks.

3. Same—Admitted Monuments—Lines and Calls of the Block.
   When admitted marks and monuments are found, answering to the calls of the survey, they establish conclusively the location, and it is only in the absence of original marks and monuments upon the ground and the total failure of evidence to supply them that recourse can be had to the lines and calls of the block, or the lines and calls of any junior member of the block, or any other.

4. Same—Town Lots—Admitted Monuments—Original Stakes.
   Rule that purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized and subsequent surveys will not be permitted to unsettle their lines is inapplicable where stakes claimed by landowner to mark true boundaries were not original stakes placed by subdividers and were not recognized by adverse claimants as the true boundary between lots.

5. Same—Surplusage—Evidence.
   In action of ejectment between owners of adjacent lots to determine correct boundary between their lots, evidence was insufficient to establish a surplusage of land in the block as claimed by plaintiff.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 16, 1940. (Docket No. 84, Calendar No. 41,325.) Decided January 7, 1941.

Ejectment by Edmond H. McMurtry and Gladys E. McMurtry against Jarvis Abbey and wife and Alois Tanghe and wife to determine the correct line

between plaintiffs' and defendants' lots. From judgment for defendants, plaintiffs appeal. Affirmed.

*Schmalzriedt, Frye, Granse & Frye,* for plaintiffs.

*Rudolph C. Schmidt* and *Meurer & Meurer* (*Henry J. Meurer,* of counsel), for defendants.

SHARPE, C. J.  This case involves the determination of the correct line between plaintiffs' and defendants' lots.  Nottingham subdivision, in which the property in question is located, was platted in 1917.  It consists of a single street, Nottingham Road, running in a northerly and southerly direction for a distance of more than one mile, from Mack avenue on the south to Harper avenue on the north, and intersected by 10 streets running in an easterly and westerly direction.  There is a single row of lots on each side of the street.  Lots Nos. 215 and 216 involved in this case are on the westerly side of the street, between Outer drive, formerly Leipzig street, on the south and Linville, formerly Sheffield, on the north.  Each lot has a frontage of 40 feet and a depth of 125 feet, which includes a six-foot easement in the rear.

In 1927, plaintiffs purchased lot No. 215 on a subland contract, the original grantor of which was Alois Tanghe, one of the defendants in this case. At the time plaintiffs purchased this lot, the intersecting street at the south was called Leipzig.  In 1930, Leipzig street was widened by the city and State and its name changed to Outer drive.  In the summer of 1927, plaintiff built a single residence, garage and a two-ribbon cement drive from the street to the garage.  Plaintiffs' house was the first house erected in this block.  It is approximately 30

feet across the front, 31 feet in the middle, which includes a bay window, and runs again to approximately 30 feet in the rear.

In September, 1937, defendants Abbey purchased their house and lot (No. 216) on a land contract from Mr. Tanghe. Relations between plaintiffs and defendants Abbey were most amicable until the spring and summer of 1939. Prior to this time, the Abbeys permitted plaintiffs to have access over a portion of their (Abbeys') land in order that plaintiffs might more easily drive their car from the street to the garage in the rear of plaintiffs' lot.

In March, 1939, the Abbeys had their property surveyed and about this time they replaced a fence separating the lots. It started near the rear of defendants' house and went to the back of the lot. According to defendants' claim, this fence is about three inches within their lot line. Plaintiffs had their land surveyed in September, 1939, and claim that defendants' fence encroaches on plaintiffs' property from about 4 to 6 inches; and that if the fence were located on the proper line, the distance between plaintiffs' bay window and the fence would be about 6 feet and 6 inches, where the distance is now 6 feet and 2 inches.

Plaintiffs filed their declaration in an action of ejectment alleging that they are the owners of the disputed six inches of land. They claim that when they bought lot No. 215, the northerly line of Leipzig street was 400 feet south of the south line of lot No. 215; that in 1930, when Leipzig street was widened, 45 feet was taken to the north of the former street line leaving a distance from said street to plaintiffs' southerly lot line of 355 feet; that before plaintiffs purchased their lot, its location was pointed out to them by lot numbers impressed in the cement sidewalk and by wooden stakes found ad-

jacent to the sidewalk markings; that before plaintiffs commenced construction of their house, a survey was made and iron stakes placed at the corners of lot No. 215; that both the wooden and iron stakes located at the front corners are still there; that the stakes at the rear of the lot were obliterated sometime later when some public utility excavated in the six-foot easement at the rear; and that the correct southerly line of their lot is 355 feet from Outer drive.

Defendants contend that the monument at Nottingham and Outer drive is not an original monument; that the substitute monument placed by the city of Detroit, instead of being moved 45 feet north, was in fact erroneously located and was placed six inches too far south; that the defendants' north stake does not check with the erroneously located replacement monument at Outer drive, but does check with the monument at Linville avenue; that the plaintiffs' south stake does not check with the monument at Linville; that there are 40½ feet between the north and south stakes, although plaintiffs' lot is only 40 feet wide; and that the plaintiffs' south stake is incorrectly located and does not establish the line because it is not an original subdivision stake.

The trial court held that plaintiffs had not established their claim to the land in question and entered a judgment in favor of defendants.

Plaintiffs appeal and contend that where permanent monuments at street intersections of a subdivision have been obliterated by widening of streets and a dispute arises as to the correct boundary between two lots in the approximate center of the block, the owner of one of the lots has a right to rely on lot stakes marking its boundary found at the time of purchase and confirmed as

correct by a survey made and marked by iron stakes in the same year; and that where a block of a subdivision has an excess of approximately six inches of land over that shown on the original plat, there is no legal or practical right to allocate the entire six inches of excess to lots south of the center of the block.

It is the claim of defendants that all the surveyors correctly located the south line of Linville avenue and the monument at its intersection with Nottingham; that the line and point, so established, checks with other stakes on Linville avenue which have never been moved and checks with other corner posts.

"It is well settled that where a plat is referred to in a deed, as a part of the description of the land conveyed, such plat becomes an essential part of the description; and that courses and distances, quantities and measurements are controlled by natural or fixed land marks." Clark on Surveying and Boundaries, § 485.

See, also, *Warner* v. *Noble,* 286 Mich. 654.

"Admitted monuments; others lost. When admitted marks and monuments are found, answering to the calls of the survey, they establish conclusively the location. * * * And it is only in the absence of original marks and monuments upon the ground, and the total failure of evidence to supply them, that recourse can be had to the lines and calls of the block, or the lines and calls of any junior member of the block, or any other. Both these methods cannot be resorted to at the same time." Clark on Surveying and Boundaries, § 236.

The theory upon which plaintiffs plant their action is that by measuring from a monument at Nottingham and Outer drive, the line between lots Nos.

215 and 216 would be established six inches farther south, and they rely upon *Pere Marquette R. Co.* v. *Tower Motor Truck Co.*, 222 Mich. 190, and *Miller* v. *Michel,* 227 Mich. 497, in support of their theory. The theory of these cases is that purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and that subsequent surveys will not be permitted to unsettle their lines. The cases relied upon by plaintiffs correctly state the rule of law, when the facts warrant the application of such a rule, but the difficulty is that in the instant case there was no recognition by the interested parties that the line claimed by plaintiffs was the true line. The defendants never recognized the plaintiffs' south stake as the line. In fact defendants did not know of its existence as it was hidden under plaintiffs' drive. Moreover, the fact that plaintiffs sought to purchase a foot of land from Tanghe is some evidence that plaintiffs realized their house was built too close to the driveway. It is evident that the stakes now claimed by plaintiffs to mark the true lines are not original stakes placed by the subdividers and consequently do not establish the survey as against the true line.

It is also evident that the Linville line and its corner with Nottingham checks with original stakes on Linville and checks with all stakes in the block except with the south stake as claimed by plaintiffs.

We are constrained to agree with the trial court that plaintiff did not establish a set of facts which would warrant a holding that the line should be measured from the new monument at Outer drive placed by the city and county engineers.

Plaintiffs also urge that where there is a surplus in the block, the trial court was in error in awarding this surplusage to the lot or lots located south of the center of the block. We are unable to say

that there is such a surplusage. The trial court did not make such a finding. If the monument at Outer drive is moved six inches to the north as defendants claim it should be, then there is no surplusage. Assuming as we have that the Linville avenue line is the correct starting point, then there is no surplusage. Again we are constrained to hold that plaintiffs have not established a surplusage and the case of *Anderson* v. *Wirth,* 131 Mich. 183, has no application.

The judgment of the trial court is affirmed, with costs to defendants.

BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.